**BOSTON'S CHILDREN FIRST, Ann F. Walsh, President, Nicholas Anderson, a minor by his parent and next friend, Ellen Dowd, John P. Feeney, Jr., a minor, by his parents and next friends, Ena Feeney and John Feeney, Michael Gattozzi, a minor, by his parents and next friends, Joseph Gattozzi and Patrice Gattozzi, Jamie Lee Higgins, a minor, by her parents and next friends, Kerry Ann Higgins and Joseph Higgins, Kayleigh Barry–Meltzer, a minor, by her parents and next friends, Cathleen Barry and George Meltzer, John K. O'Toole, a minor, by his parents and next friends, John O'Toole and Rose O'Toole, Kathleen McCoy, a minor, by her parents and next friends, Carol McCoy and John McCoy, Andrew Sharaffa, a minor, by his parents and next friends, David Sharaffa and Mae Sharaffa, Sean J. Stoddard and Thomas E. Stoddard, minors, by their parents and next friends, Mary K. Stoddard and Stephen Stoddard, for themselves and all others similarly situated, Plaintiffs,**

v.

**CITY OF BOSTON, Thomas Menino, Mayor of the City of Boston Thomas Payzant, Superintendent of the Boston Public Schools, the Boston School Committee, Elizabeth Reilinger, Dr., Boston School Committee Chairperson, Alfreda J. Harris, School, Committee Vice–Chairperson Felix D. Arroyo, School Committee Member, Robert Gittens, School Committee Member, Susan Naimark, School Committee Member, Marchelle Raynor, School Committee Member, William Spring, School Committee Member, Defendants.**

No. C.A. 99–11330–NG.

United States District Court, D. Massachusetts.

May 19, 2000.

Chester Darling, Boston, MA, for Plaintiffs.

Frances S. Cohen, Diane Dilanni, Hill & Barlow, Boston, MA, Merita A. Hopkin, City of Boston Law Dept., Boston, MA, for Defendants.

Joel Z. Eigerman, Roche, Carens & De-Giacomo, P.C., Boston, MA, for Interested Party.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

The plaintiffs in this action are a self-described membership and advocacy organization, Boston's Children FIRST ("FIRST"),[1] and ten white school children, each of whom has applied for, and been denied, his or her school assignment of choice in the Boston Public Schools.[2] They allege that they have been deprived of their preferred school assignments because of their race in violation of both federal and state law.[3] Each plaintiff seeks either compensatory or nominal damages as well as declaratory and injunctive relief. They also seek to represent all other white school children similarly situated in the form of a class action.

The defendants, the City of Boston, the Boston School Committee, the mayor of Boston, and the individual School Committee officers, have filed a motion to dismiss [docket entry # 54] the case, arguing that each plaintiff cannot sustain a viable claim

---

1. FIRST describes itself as a non-profit advocacy group and membership organization whose purpose includes obtaining equality in student assignment within the Boston Public Schools without regard to race. FIRST claims its members have school aged children attending or seeking to attend public school within the city of Boston.

2. The claims are brought by the parent or parents of the students.

3. They argue that the Boston school assignment plan, the "Controlled Choice Student Assignment Plan", violates the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 2000 (Title VI), and Article 111 of the Amendment to the Massachusetts Declaration of Rights.

for either damages or declaratory and injunctive relief.

Significantly, the School Committee voted on July 14, 1999, to eliminate the use of the racial/ethnic guidelines for the assignment process in the 2000–2001 school assignment process. The future of the Boston school assignment process remains unclear. At oral argument, counsel for the City of Boston did indicate that whatever form the process takes, all present school assignments would be guaranteed.

In support of the defendants' motion to dismiss, they have submitted three affidavits [docket entries # 22, # 46, # 56] from Hagop N. Yessayan ("Yessayan"), Director of the Records Management Unit of the Office Information Systems of the Boston School Department. Yessayan is responsible for developing, maintaining, and operating the computer programs that implement the Controlled Choice Student Assignment Plan ("plan") and for maintaining data regarding student assignments. Yessayan's affidavits describe the history of each plaintiff's school assignments, and the defendants argue, conclusively establish that the case must be dismissed.

The challenged plan took several factors into account when assigning a student to a particular school: (1) the assignment of a sibling to the school, (2) residence in the walk zone of the school, (3) the preference ranking of the school by the student, (4) priority for students currently enrolled at a school who are not guaranteed to continue at the school for the next year, (5) whether seats are available (within the ideal racial percentage plus or minus 15%) for students of that race or ethnicity,[4] and (6) the student's lottery number which is assigned randomly.

Both parties agree that race is a factor in the school assignment process. Even defendants do not dispute that the plan can deny white students seats at their preferred schools while giving those same seats to students of other races with higher lottery numbers. They argue that there are two categories of plaintiffs. First, the defendants argue that certain plaintiffs were not denied their preferred assignments because of their race, but because of the operation of the other race-neutral aspects of the plan. Thus, defendants say that plaintiffs lack standing to sue because they would not have received their preferred school assignments anyway, even if racial preferences were not used in the assignment process.

Second, with respect to the plaintiffs who were denied a seat because of their race, defendants argue that they cannot maintain a claim for declaratory and injunctive relief (for various reasons that will be explained below), and their remaining claims, which seek only nominal damages, cannot, in and of themselves, keep the case alive.

Not surprisingly, the plaintiffs disagree. They allege that they were denied their preferred assignments because of their race. They urge the Court not to rely exclusively on the affidavits of Yessayan to resolve the role race played in the assignment process. Instead, the plaintiffs seek the opportunity to examine the assignment records in the discovery process.

Moreover, plaintiffs critique the defendants' standing argument as unfaithful to the case law. They argue that the mere inability to compete on an equal footing for the same seats constitutes a sufficient injury for standing purposes—irrespective of whether a student actually would have received the preferred assignment in the absence of a racial preference.

I agree with the plaintiffs. I believe that they should be allowed to conduct discovery before the Court addresses any of the arguments premised on the information contained in Yessayan's affidavits.

---

4. The role these guidelines play in the school assignment process, as well as the role the three school zones play in determining these guidelines, is not entirely clear from the record before the Court.

Therefore, in ruling on the motion to dismiss, I will look only to the pleadings and no more. Because I conclude that the plaintiffs have stated a claim upon which relief can be granted both with respect to injunctive relief and damages, I **DENY** defendants' motion to dismiss.

There is one exception. Five of the plaintiffs did not apply to change schools in the 1999–2000 school year. Accordingly, they cannot be said to suffer any injury requiring injunctive relief (although they may have a claim for damages). With respect to the claims for injunctive relief of these plaintiffs, Michael Gattozzi, Kathleen McCoy, Nicholas Anderson, Kayleigh Barry–Meltzer, and Sean Stoddard, the defendants' motion to dismiss is **GRANTED.**

## I. *FACTUAL BACKGROUND*

For a description of the claims of the original plaintiffs (Gatozzi, Anderson, McCoy, O'Toole) *see* this Court's previous Memorandum and Order denying plaintiffs' request for a preliminary injunction. *Boston's Children First v. City of Boston,* 62 F.Supp.2d 247 (D.Mass.1999). I discuss the allegations of the plaintiffs added in the second amended complaint [docket entry 51] below.

### A. *John Feeney*

John Feeney ("Feeney") alleges that in 1999 he was denied his first five choices for "K2" kindergarten because of his race.

### B. *Jamie Lee Higgins*

Jamie Lee Higgins ("Higgins") alleges that in 1998 she was denied all three of her choices for "K1" kindergarten because of her race. Higgins also alleges that in 1999 she was denied her first choice for "K2" kindergarten because of her race.

### C. *Kayleigh Barry–Meltzer*

Kayleigh Barry–Meltzer ("Barry–Meltzer") alleges that in 1997 she was denied her first three choices for "K2" kindergarten because of her race. She alleges that her mother discovered an empty seat at one of those schools and that Barry–Meltzer was given that seat. She alleges that she was not awarded the empty seat in the regular assignment process because all the seats reserved for white students were full, and that particular seat was reserved for students of other races. Barry–Meltzer alleges that she was not automatically reassigned to this school for first grade because of her race.

Barry–Meltzer further alleges that she was denied her first three choices for first grade because of her race, and then was denied her first three transfer choices for first grade because of her race.

### D. *Andrew Sharaffa*

Andrew Sharaffa ("Sharaffa") alleges he was denied his three choices for "K1" kindergarten in 1998 because of his race, and his first choice for "K2" kindergarten in 1999 because of his race.

### E. *Sean Stoddard*

Sean Stoddard alleges that in 1994 he was denied his choice for "K1" kindergarten because of his race. He further alleges he was denied his first four choices for "K2" kindergarten, and his first choice for first grade, because of his race.

### F. *Thomas Stoddard*

Thomas Stoddard alleges that in 1998 and in 1999 he was denied a seat at any public school because of his race.

### G. *Boston's Children FIRST ("FIRST")*

FIRST claims that the defendants' unlawful practices have forced FIRST to expend considerable resources advocating, organizing and educating the public and governmental officials about equality in student assignments. FIRST brings this action on behalf of itself and its members with school-aged children residing in Boston, who FIRST claims have been unlaw-

fully denied their preferred school assignments.

## II. *ANALYSIS*

### A. *Conversion to Summary Judgment*

Before addressing each of the individual plaintiff's claims, I note the posture of the case. Defendants have filed a motion to dismiss. Generally, to survive a motion to dismiss, a complaint must merely state a legally sufficient claim, and the Court is to "take the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992). The Court cannot dismiss the case "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The likelihood of the plaintiff's proving those facts is not relevant to the test. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Indeed, the Court is to look to the "pleadings and no more." *Fleming v. Lind–Waldock & Co.,* 922 F.2d 20, 23 (1st Cir. 1990).

However, Federal Rule of Civil Procedure 12(b)(6) allows the Court to convert a motion to dismiss into one for summary judgment when "matters outside the pleading" are submitted to the Court. *See also supra* n. 5. According to the rule, in treating a motion to dismiss as a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Yessayan's affidavits, were I to consider them in ruling on the defendants' motion, could be a basis for converting this motion into one for summary judgment.

I expressly decline to consider these affidavits for two reasons: (1) defendants have not had the opportunity to conduct any discovery to harness evidentiary support for their claims, and (2) Yessayan's affidavits do not fully explain the workings of the school assignment process (the role of the three school zones and ideal racial percentages in the assignment process, how temporary and permanent seats are determined, how race affected the students with present school guarantees and how these students affected the number of available seats in the assignment process, the effect of present school guarantees on the future assignment processes, etc.). The Court believes that the further workings of the adversary process will produce a more intelligible record from which to fairly evaluate the plaintiffs' claims. Therefore, I shall analyze the claims under the standard for a motion to dismiss, as discussed above, without regard to Yessayan's affidavits.

### B. *Claims For Compensatory and Nominal Damages*

The defendants' motion to dismiss the plaintiffs' damages claims does not challenge the sufficiency of the factual allegations of the plaintiffs, but instead rests entirely on the information contained in Yessayan's affidavits. Because I refuse to consider the information outside the pleadings, and because I find that plaintiffs' allegations that they were denied their preferred assignments because of their race is sufficient to state a claim upon which relief can be granted, defendants' motion to dismiss the plaintiffs' claims for damages is **DENIED.**

### C. *Claims For Declaratory and Injunctive Relief*

#### 1. *Mootness*

Defendants argue that the School Committee's vote on July 14, 1999, to remove race as a factor in the school assignment process has effectively mooted plaintiffs' claims for declaratory and injunctive relief. Defendants cite to *County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) explaining that there is no justiciable controversy when

"(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631, 99 S.Ct. 1379 (internal quotation marks and citations omitted).

■ I reject defendant's argument for a variety of reasons. Even if the only way race affected the assignment process was by the process of holding "seats for students of other races," it is not clear that the school committee vote is sufficient to satisfy the "no reasonable expectation" standard. "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* — U.S. —, —, 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000) (holding that a wastewater treatment plant's compliance with a National Pollutant Discharge Elimination System ("NPDES") permit (after the commencement of litigation), and the eventual shutdown of the treatment facility, was insufficient to moot a citizen suit seeking injunctive relief and civil penalties). Whether the School Committee vote is sufficient to meet the heavy burden placed on the defendants is, at best, unclear. This is because "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Id.* at 700; *see also Mack v. Suffolk County,* 191 F.R.D. 16, 21 (D.Mass.2000).

I need not resolve the issue as the mootness argument fails for other reasons. First, the fact that present school assignments will be honored reduces the seats available for students seeking assignment in the upcoming school year. In other words, it is not clear that the interim events have "completely and irrevocably eradicated the effects of the alleged violation."

Second, the defendants concede that the three school zones, allegedly drawn on the basis of race, will continue to be used in the assignment process. Defendants argue that plaintiffs allege no injury traceable to the zones, as they have not alleged that they seek assignment outside their respective school zone.

At oral argument, plaintiffs responded that the defendants have an obligation to design zones on a race neutral basis, and that plaintiffs need not specifically articulate any one particular alternative to the current zone system. To the extent that the continuation of the allegedly unlawful zones adversely affects their school assignments, plaintiffs argue that they will continue to suffer injury.

The plaintiffs' argument is unclear. The plaintiffs will have to prove how the allegedly unlawful aspect of the zones—drawing them along racial lines—will injure them in the future assignment process presumably after race will no longer be a factor in the mechanics of an individual school assignments.[5] However difficult it may be to prove this problem, for the moment, plaintiffs have stated a legally sufficient claim. Moreover, plaintiffs should be given the opportunity to conduct discovery to gather the requisite information to clarify this theory. They should not be forced to defend it on the merits without information. Upon completion of discovery, if there is no factual dispute over whether the plaintiffs' school assignments are unlawfully affected by the continued use of the zones, the claims relying on this argument can be disposed of on summary judgment.

---

5. Certainly, the converse would be unlawful—drawing school zones to ensure that black children only attended school with other black children. While the impact of the continued use of the current zones is less clear, the plaintiffs have adequately alleged—at this very preliminary stage—that the zones are unlawfully drawn on racial lines and that their school assignments will be adversely effected by them.

### 2. *Standing*

The defendants' motion to dismiss the claims for injunctive relief for lack of standing is also largely based on information included in Yessayan's affidavit. As the Court has made clear, it will not consider this information in ruling on the motion to dismiss.

■ It is uncontested that some of the plaintiffs did not seek assignments in the 1999–2000 school year and have not indicated any present intention to seek an assignment in the 2000–2001 school year. Injunctive relief is unnecessary to redress the injuries of these plaintiffs as they have not indicated that they will even participate in the future school assignment plan. In other words, they are currently attending the school of their choice. These plaintiffs include: Gattozzi, McCoy, Anderson, Barry–Meltzer, and Sean Stoddard. Because injunctive relief is unnecessary to redress their alleged injuries, the defendants' motion to dismiss their claims for injunctive relief is **GRANTED.**

All other plaintiffs have alleged that they have been denied the assignment of their choice because of race in the preceding school year, and therefore, injunctive relief is necessary to redress their injuries—should the assignments prove to be the result of an unlawful plan. Therefore, defendants' motion to dismiss the claims for injunctive relief of all other plaintiffs is **DENIED.**

### III. *CONCLUSION*

For the reasons stated above, defendants' motion to dismiss [docket entry # 54] is **GRANTED** with respect to the following plaintiffs' claims for injunctive relief: Michael Gattozzi, Kathleen McCoy, Nicholas Anderson, Kayleigh Barry–Meltzer, and Sean Stoddard, and the motion is **DENIED** with respect to all other claims. **SO ORDERED.**