# United States Court of Appeals
## For the First Circuit

---

No. 00-1731

NICHOLAS ANDERSON, ET AL.,

Plaintiffs, Appellants,

v.

CITY OF BOSTON, ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

---

Before

Torruella, Chief Judge,

Boudin and Stahl, Circuit Judges.

---

Robert J. Roughsedge, with whom Chester Darling and Michael Williams, were on brief, for appellants.
Frances S. Cohen, with whom Merita A. Hopkins, Corporation Counsel of the City of Boston, Adam N. Lewis, Peter N. Kochansky and Hill & Barlow, were on brief, for appellees.

---

April 5, 2001

**TORRUELLA, <u>Chief Judge</u>.** Appellants are five school-age children who live in Boston, Massachusetts. In combination with five other children and an advocacy group, Boston's Children First, they brought suit, claiming that the Boston elementary school assignment program denied them their preferred school assignments based on their race, in violation of federal and state law. <u>Boston's Children First</u> v. <u>City of Boston</u>, 98 F. Supp. 2d 111, 112 (D. Mass. 2000). Each plaintiff sought declaratory and injunctive relief, as well as compensatory or nominal damages. <u>Id.</u> The district court held that because the five appellant children did not apply to change schools prior to the 1999-2000 school year, they could not be said to suffer any injury requiring injunctive relief, and therefore lacked standing to sue for such relief. <u>Id.</u> at 114. Accordingly, the district court granted defendants' motion to dismiss as it related to appellants' claims for injunctive relief. <u>Id.</u> Appellants then appealed to this Court. Because we lack jurisdiction to entertain this interlocutory appeal, we must dismiss without addressing the merits.[1]

---

[1]  Some time after the decision underlying this appeal had issued, this Court granted a writ of mandamus to recuse the district judge, based on an appearance of partiality stemming from that judge's public comments. <u>Boston's Children First</u> v. <u>City of Boston</u>, 239 F.3d 59 (1st Cir. 2001), <u>amended on denial of reh'g</u>, -- F.3d --, 2001 WL 274467 (1st Cir. Mar. 2, 2001). We asked both parties to file supplemental briefs addressing whether that grant of mandamus required us to vacate the decision underlying this appeal. Both parties argued that it did not, because the appealed-from order predated the events giving rise to the writ. We agree. <u>See</u> <u>Liljeberg</u> v. <u>Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 864 (1988) (scope of recusal remedy is complex and fact-

Appellants argue first that this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which provides for appellate jurisdiction of "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ." They suggest that the district court's dismissal of their claims for injunctive relief, based on the determination that they lacked standing, amounted to a refusal of an injunction appealable pursuant to § 1292(a)(1).

Orders in which the district court <u>expressly</u> denies a request for injunctive relief are immediately appealable as of right under § 1292(a)(1). <u>Casas Office Machs.</u> v. <u>Mita Copystar Am., Inc.</u>, 42 F.3d 668, 673 (1st Cir. 1994) (quoting <u>Morganstern</u> v. <u>Wilson</u>, 29 F.3d 1291, 1294 (8th Cir. 1994)). When the order only has the "practical effect" of denying an injunction, however, the denial must have a "serious, perhaps irreparable, consequence," and be "effectually challenged only by immediate appeal." <u>Id.</u>; <u>see also</u> <u>Carson</u> v. <u>American Brands, Inc.</u>, 450 U.S. 79, 84 (1981) (setting forth this test). This narrow scope given to § 1292(a)(1) stems from the "general congressional policy against piecemeal review," as well as Congress's intent to "carve out

---

dependent); <u>In re Allied-Signal Inc.</u>, 891 F.2d 967, 973 (1st Cir. 1989) (lack of actual bias made it unnecessary to vacate rulings made prior to mandated recusal); <u>In re Sch. Asbestos Lit.</u>, 977 F.2d 764, 786 (3d Cir. 1992) (proposing four approaches to vacating pre-recusal decisions, none of which would require us to vacate this decision).

only a limited exception to the final-judgment rule." Carson, 450 U.S. at 84.

This Court has held that the dismissal of some claims for injunctive relief when other claims remain pending does not "expressly" deny an injunction. Plymouth County Nuclear Info. Comm., Inc. v. Boston Edison Co., 655 F.2d 15, 16-17 (1st Cir. 1981) (striking claims for injunctive relief because they were preempted by federal legislation); see also Hutchinson v. Pfeil, 105 F.3d 566, 569 (10th Cir. 1997) (partial summary judgment against plaintiff who sought injunctive relief); Gamboa v. Chandler, 101 F.3d 90, 91 (9th Cir. 1996) (same); Cuomo v. Barr, 7 F.3d 17, 19 (2d Cir. 1993) (partial summary judgment on claims for injunctive relief); Woodard v. Sage Prods., Inc., 818 F.2d 841, 845 (Fed. Cir. 1987) (partial summary judgment in favor of several defendants).

The district court's determination that the five appellants lacked standing to seek injunctive relief does have the "practical effect" of denying an injunction, because it has "erected a 'legal barrier' foreclosing any meaningful future consideration of a formal application" for injunctive relief by these particular appellants. Plymouth Nuclear, 655 F.2d at 17. This Court may therefore only premise its jurisdiction on a showing that appellants face "serious, perhaps irreparable, harm" upon the denial of immediate review. Carson, 450 U.S. at 84. The procedural history of the instant

litigation, specifically appellants' failure to pursue appellate (or other) review of the district court's earlier denial of a preliminary injunction, points against a finding of serious harm. <u>Plymouth Nuclear</u>, 655 F.2d at 17-18 (holding that the failure to appeal from or move for reconsideration of a previous denial of a preliminary injunction makes interim relief a "dead issue," and is indicative of a lack of serious harm). In this case, appellants' motion for a preliminary injunction was denied on August 10, 1999, nine months before the order appealed here issued. <u>See</u> <u>Boston's Children First</u> v. <u>City of Boston</u>, 62 F. Supp. 2d 247, 248 (D. Mass. 1999); <u>cf.</u> <u>Plymouth Nuclear</u>, 655 F.2d at 17-18 (eighteen months between denial of preliminary injunction and dismissal of claims for permanent injunctive relief). There was no appeal from the denial of interim relief,[2] nor was a motion for reconsideration filed. <u>Plymouth Nuclear</u>, 655 F.2d at 17-18; <u>Samayoa</u> v. <u>Chicago Bd. of Educ.</u>, 783 F.2d 102, 104 (7th Cir. 1986) (failure to appeal denial of preliminary relief indicative of lack of urgency). Appellants also failed to seek other avenues of interlocutory appeal, such as a separate final judgment on the dismissed claims pursuant to Federal Rule of Civil Procedure 54(b) or certification for an interlocutory appeal under 28 U.S.C. § 1292(b).

---

[2] Interlocutory orders denying preliminary injunctive relief may almost always be immediately appealed pursuant to § 1292(a)(1). <u>E.g.</u>, <u>CMM Cable Rep., Inc.</u> v. <u>Ocean Coast Props., Inc.</u>, 48 F.3d 618, 620-21 (1st Cir. 1995).

<u>Barr</u>, 7 F.3d at 20 (failure to pursue all available courses of interlocutory appeal supports an inference that serious harm does not exist).

Appellants seek to distinguish <u>Plymouth Nuclear</u> by arguing that their failure to press their claims for temporary relief resulted from delays attributable to appellees or the district court: namely, the alleged failure of appellees to cooperate with discovery orders and the court's suggestion that a renewed motion for a preliminary injunction would fail unless additional evidence was unearthed during discovery. Even if these discovery-related complaints are justified, however, their timing makes appellants' argument meritless. The original motion for a preliminary injunction was denied on August 10, 1999. Appellants did not attempt to renew that motion until over nine months later, on May 19, 2000,[3] which was coincidentally the same day that the district court partially granted defendants' motion to dismiss. It was not until a month later, at a June 20, 2000 scheduling conference, that the district court indicated that the renewed motion would probably fail because insufficient new evidence had emerged (via discovery) in the preceding ten months. The reasons why appellants withdrew their May 19 renewed motion for preliminary injunction and delayed its resubmission are irrelevant: it is their failure to press

_____

[3] The renewed motion for a preliminary injunction was later withdrawn.

their *original* motion for a preliminary injunction that is indicative of the lack of serious harm.

Even if we were to ascribe minimal weight to appellants' failure to press their request for interim relief, appellants have made no showing that this order is of the type that can be "effectually challenged only by immediate appeal." Casas, 42 F.3d at 672. The order simply dismisses certain claims while other claims remain pending. Once the district court has disposed of all claims, this Court can address them as a whole, if appellants choose to appeal at that point. Appellants have simply made no compelling argument as to why the order is "insusceptible of effective vindication following final judgment." In re Unanue Casal, 998 F.2d 28, 32 (1st Cir. 1993); see also Woodard, 818 F.2d at 851-52 (comparing the ability to review denials of permanent injunctions upon final appeal with the inability to review denials of preliminary injunctions at that stage).

Appellants also argue that the dismissal of their claims for permanent injunctive relief "effectively denied" their renewed motion for a preliminary injunction, which had not yet been filed when this order issued.[4] In other words, because the district court found that these five plaintiffs lacked standing to seek injunctive relief, they could not be included in a renewed petition for preliminary relief.

---

[4] The renewed motion was actually filed the same day that the order issued (May 19, 2000), but as we have noted, was later withdrawn.

Even if we assume that this is so, and even if we were to read § 1291(a)(1) as applicable to the "effective denial" of an as yet unrequested preliminary injunction, we have previously denied interlocutory review of the refusal of a permanent injunction despite the assumption that such refusal would "foreclose any meaningful future consideration" of claims for injunctive relief. See Plymouth Nuclear, 655 F.2d at 17. We do so again here. To hold otherwise could unacceptably broaden the scope of § 1292(a)(1), as any plaintiff denied a permanent injunction would claim jurisdiction based on their plans to seek future preliminary relief.

**B**

Appellants would alternatively premise this Court's jurisdiction on the "collateral order doctrine," which provides a narrow exception to the final judgment rule. Midland Asphalt Co. v. United States, 489 U.S. 794, 798 (1989). This doctrine allows appeal from decisions "which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated." Id. (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)) (internal quotation marks omitted). This Court applies a four-part test to determine whether a decision qualifies as a "collateral order." The order must involve:

> (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is 'unfinished' or 'inconclusive'; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion.

United States v. Sorren, 605 F.2d 1211, 1213 (1st Cir. 1979). In other words, the order must be separable, final, urgent, and important. In re Cont'l Inv. Corp., 637 F.2d 1, 7 (1st Cir. 1980).

We need not determine whether this order is final, urgent, and important, because it is clearly not separable in the manner contemplated by the collateral order doctrine. For an order to be collateral, it must not be "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Coopers & Lybrand v. Livesay, 437 U.S. 468-69 (1978) (quoting Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 558 (1963)) (internal quotation marks omitted). Here, the district court order dismissing the claims for injunctive relief was dependent on the court's evaluation of the factual basis for a claim of unconstitutional discrimination, as well as the application of standing jurisprudence to those facts. Moreover, a partial grant of a motion to dismiss simply is not the sort of order that falls within the collateral order bailiwick -- a category whose usual members include orders denying security in derivative suits, bail

-10-

determinations, orders requiring plaintiffs to identify themselves, and orders granting disqualification of the trial judge -- decisions which in no way go to the merits of the underlying claim. See generally 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3911.2 (3d ed. 1992) (discussing scope of the collateral order doctrine). In short, this order is a decision on the merits, not on an issue collateral to them.

## C

Appellants also suggest that this Court has jurisdiction pursuant to the "pragmatic finality" doctrine, which they understand as allowing this Court to premise its jurisdiction on an ad hoc balancing of "the inconvenience and costs of piecemeal review and the danger that delay will create an injustice." Gillespie v. U.S. Steel Corp., 379 U.S. 148, 152 (1964). However, the Supreme Court has since substantially limited the reach of Gillespie and condemned a broad balancing approach to questions of finality. See Johnson v. Jones, 515 U.S. 304, 315 (1995) ("[W]e do not now in each individual case engage in ad hoc balancing to decide issues of appealability"). Numerous courts have agreed that Gillespie, in itself, does not provide appellate review unless another exception to the final judgment rule is available. See, e.g., Kmart Corp. v. Aronds, 123 F.3d 297, 300 (5th Cir. 1997) (no longer recognizing the exception); Green v. Dep't of Commerce, 618 F.2d 836, 841 (D.C. Cir. 1980) ("No federal appellate

-11-

court, to our knowledge, has ever followed the Gillespie dictum in a case in which the appeal could not be justified on the basis of some other, narrower, policy demanding deviation from the finality rule."). Apart from established exceptions, this Court has indicated that appellate jurisdiction does not exist in the absence of finality, and that cases in the "twilight zone" of finality, such as Gillespie, are only addressable via mandamus upon a showing of palpable error and irreparable harm. Petralia v. AT&T Global Info. Solutions Co., 114 F.3d 352, 354 (1st Cir. 1997). We have already noted the lack of serious harm or manifest injustice in delaying appeal here until a final judgment has issued; the pragmatic finality doctrine, if it still survives, does not apply.

**D**

Because we have no jurisdiction pursuant to § 1292(a)(1), and no exception to the final judgment rule applies, we **dismiss the appeal for lack of jurisdiction**.