# United States Court of Appeals

## For the First Circuit

No. 02-1234

FEDERAL INSURANCE COMPANY

Plaintiff, Appellee,

v.

MAINE YANKEE ATOMIC POWER COMPANY

Defendant, Appellee,

STONE & WEBSTER, INCORPORATED, and
STONE & WEBSTER ENGINEERING CORPORATION

Debtors, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and B. Fletcher,[*] Senior Circuit Judge.

---

[*]Hon. Betty B. Fletcher, of the Ninth Circuit, sitting by
designation.

Michael D. Blanchard, with whom Edward J. Meehan, David E. Carney, Gregg M. Galardi, and Skadden, Arps, Slate, Meagher & Flom LLP, were on brief, for appellants.

William J. Kayatta, Jr., with whom Pierce Atwood was on brief, for appellee Maine Yankee Atomic Power Company.

_____

November 19, 2002

_____

**B. FLETCHER, <u>Senior Circuit Judge</u>**. Non-party appellants Stone & Webster Engineering Corporation and Stone & Webster, Inc., appeal the district court's decision to permit discovery from them in a dispute between plaintiff-appellee Federal Insurance Company and defendant-appellee Maine Yankee Atomic Power Company. The underlying case between Federal Insurance and Maine Yankee settled before trial. Because there is no live controversy as to the propriety of the discovery that appellants challenge, we dismiss appellants' appeal as moot.

## I.   <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

This appeal arises out of a dispute over decommissioning Maine Yankee Atomic Power's retired nuclear plant in Wiscasset, Maine. In 1998, Maine Yankee contracted with Stone & Webster Engineering Corporation to decommission the plant. Stone & Webster, Inc., as a parent of Stone & Webster Engineering, secured its subsidiary's performance. Maine Yankee, following industry practice, also obtained payment and performance bonds from Federal Insurance as additional security for Stone & Webster Engineering's performance.

In May, 2000, Maine Yankee terminated the decommissioning contract for cause and demanded that Federal Insurance perform its obligations under the additional bonds. Shortly thereafter, Stone & Webster and its subsidiaries filed for bankruptcy reorganization

-3-

under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101-1330, in federal district court in Delaware. In the Delaware bankruptcy action, Maine Yankee filed a proof of claim for approximately $78 million against Stone & Webster Engineering. Federal Insurance filed a contingent proof of claim against Stone & Webster for indemnification if Maine Yankee recovered under the bonds.

Almost simultaneously, in the Delaware bankruptcy court, Federal Insurance sought a separate declaratory judgment with respect to its liability under the performance bond. Over the opposition of Stone & Webster, as intervenor, and Federal Insurance, Maine Yankee successfully petitioned for the instant, separate action to be transferred to federal district court in Maine.

Shortly after the transfer, Maine Yankee served two subpoenas against Stone & Webster and Stone & Webster Engineering. Both companies objected and claimed that the subpoenas violated the automatic stay provision of Chapter 11, 11 U.S.C. § 362(a)(2). The matter was argued before a magistrate judge who ordered Stone & Webster and Stone & Webster Engineering to comply. The companies timely objected to the decision, but the district court upheld it.

Stone & Webster and Stone & Webster Engineering sought review in this court and simultaneously petitioned the Delaware bankruptcy court for a preliminary injunction against enforcement of the subpoenas. We disposed of the appeal on jurisdictional

-4-

grounds because we determined that the discovery order at issue, in the posture presented, was neither a final order within the meaning of 28 U.S.C. § 1291, nor was it appealable as a collateral order. We noted, in an unpublished order, that "[n]on parties can gain the right of appeal from a discovery order by defying it, being held in contempt, and then appealing the contempt order." The bankruptcy court independently rejected the companies' request for a preliminary injunction. Stone & Webster and Stone & Webster Engineering then complied fully with the subpoenas.

Maine Yankee and Federal Insurance's action did not reach trial. The parties settled their dispute and filed a stipulation of dismissal with prejudice, pursuant to which Federal Insurance agreed to pay Maine Yankee approximately $44 million under its bond obligations. Upon dismissal of the action, Stone & Webster and Stone & Webster Engineering took this appeal.

## II.  DISCUSSION

Appellants ask this court to reverse the district court's decision upholding the subpoenas or to vacate the district court's orders enforcing them. We may grant neither form of relief because appellants' acquiescence in the discovery compelled by the subpoenas deprives this court of jurisdiction over their appeal.

Federal jurisdiction, of course, is limited to "Cases [and] . . . Controversies." U.S. Const. Art. III.  And, in each

-5-

case, the issues that we are called upon to decide must present an actual, live controversy. Allende v. Shultz, 845 F.2d 1111, 1115 n.7 (1st Cir. 1988). In addition to the constitutional boundaries of our jurisdiction, Congress, as a general matter, has granted the courts of appeals jurisdiction over only final orders in cases from lower courts. See 28 U.S.C. § 1291. Some exceptions exist. For instance, a litigant may appeal certain collateral orders. See, e.g., Anderson v. City of Boston, 244 F.3d 236, 240 (1st Cir. 2001) (stating when collateral orders are appealable under Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)). Routine discovery orders – such as the orders enforcing the subpoenas at issue here – are not final orders, and no statute or doctrine invests us with jurisdiction to decide an appeal of a routine discovery order.

This is not to say that appellate scrutiny of such orders is unavailable. As we explained to appellants in their prior appeal, appellate review is available to litigants who are cited for contempt. See In re Grand Jury Subpoenas, 123 F.3d 695, 696 (1st Cir. 1997). This is because when a litigant is adjudged to be in contempt, "the contempt order is appealable . . . because as far as that party is concerned the order is final because he or she could not appeal from the final judgment of the action." 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.07[2][g] (3d ed. 1999).

If a litigant, however, complies with a discovery order, the question of its propriety ordinarily becomes moot.[1]  See United States v. Anderson, 623 F.2d 720, 724 (1st Cir.), cert. denied, 449 U.S. 1021 (1980); see also Office of Thrift Supervision v. Dobbs, 931 F.2d 956, 957 (D.C. Cir. 1991).  This rule is firmly rooted and long-settled.  It is merely an expression of the principle that guided the Supreme Court's decision in United States v. Munsingwear, Inc., 340 U.S. 26 (1950).  In Munsingwear the Court explained that an appeal by the United States which sought vacatur of an opinion in a dismissed case was moot.  The Court reasoned that the government had "slept on its rights," id. at 41, by failing to seek vacatur before the case was dismissed below and the Court therefore lacked jurisdiction to grant relief.

Appellants argue that contempt is not the only route by which they may obtain such review, and they contend that their failure to risk contempt has not mooted their appeal.  Appellants are correct that, in certain cases, risk of contempt is not necessary for an appeal.  See Church of Scientology of California v. United States, 506 U.S. 9 (1992).  But a nonparty who has complied with a discovery order faces a difficult hurdle.

---

[1]  We have consistently held that a case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the controversy. See Thomas R.W. v. Mass. Dept. of Educ., 130 F.3d 477, 479 (1st Cir. 1997) (quoting Boston and Me. Corp. v. Bhd. of Maintenance of Way Employees, 94 F.3d 15, 20 (1st Cir. 1996)).

The Supreme Court's decision in Church of Scientology did not alter the Munsingwear rule. In Church of Scientology, the Court explained that if a court may "fashion *some* form of meaningful relief," id. (emphasis in original), a case is not moot. Id. There, the Court concluded that the Church's interest in maintaining the privacy of its papers could be served by the "partial remedy" of ordering the government to destroy or return all copies in its possession. The Court therefore concluded that the case was not moot even though a "fully satisfactory remedy" was unavailable.

In their effort to invoke Church of Scientology by pointing to the possibility of "meaningful relief," appellants invoke 11 U.S.C. § 362(h), which provides for damages, actual and punitive, for a "willful violation" of an automatic stay. Appellants did not raise this argument in their opening brief, and we question whether it has been preserved adequately. In any event, we note that bankruptcy and district judges in Delaware and a magistrate judge and a district judge in Maine all have assumed implicitly or directly recognized the legitimacy of the challenged discovery. Against such a background, the prospect of securing meaningful relief for a willful violation of the automatic stay is far too insubstantial to counter mootness. Appellants' decision to comply with the subpoenas thus mooted the dispute and forecloses our review.

The Supreme Court's decision in <u>U.S. Bancorp Mortgage Co.</u> v. <u>Bonner Mall P'ship</u>, 513 U.S. 18 (1994), a case decided after <u>Church of Scientology</u>, is instructive.   In <u>U.S. Bancorp</u>, the appellant sought vacatur of an opinion in a case that had settled. The Court refused to vacate the opinion and explained:

> The principal condition to which we have looked, is whether the party seeking relief from the judgment below caused the mootness by voluntary action. . . . A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.   The same is true when mootness results from unilateral action of the party who prevailed below.   Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari . . . .   The judgment is not unreviewable, but simply unreviewed by his own choice.

<u>Id.</u> at 24-25.   Although the instant case does not involve a settlement between appellants and appellees, the considerations that determined the decision in <u>U.S. Bancorp</u> apply just as easily here.

Our conclusion is not draconian.  Contempt citations can – and often do – carry significant penalties.  But if a party risks contempt to obtain review, lower courts are free to consider the circumstances in determining appropriate sanctions and to stay those sanctions pending appeal.  The fact that the risk of contempt may be uncomfortable for a litigant, however, does not provide a basis for courts to act when they are without jurisdiction.

### III.  <u>CONCLUSION</u>

Appellants chose to acquiesce in the orders they now ask us to review.  Their decision to comply rather than to risk contempt sanctions, however, ended the controversy and mooted the issue.  We dismiss their appeal.

<u>**DISMISSED**</u>. Costs shall be taxed in favor of appellee Maine Yankee.