# United States Court of Appeals
## For the First Circuit

No. 12-1370

WATCHTOWER BIBLE AND TRACT SOCIETY
OF NEW YORK, INC. ET AL.,

Plaintiffs, Appellants,

v.

GUILLERMO SOMOZA COLOMBANI ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Paul D. Polidoro, with whom Gregory Allen, Associate General
Counsel, Legal Department, and Nora Vargas Acosta, were on brief
for appellants.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
Department of Justice, with whom Luis R. Román-Negrón, Solicitor
General, was on brief for appellees.

April 1, 2013

**SELYA, Circuit Judge.** With only limited exceptions, the federal judicial system bans piecemeal review of trial court decisions. This policy is grounded in considerations of efficiency and the proper allocation of overtaxed judicial resources. Courts of appeals must police these boundaries with vigilance. This is such an occasion.

This appeal arises out of an order dismissing officials of the Commonwealth of Puerto Rico (collectively, the Commonwealth defendants) as parties in a nuanced First Amendment case. Concluding, as we do, that the appeal has been brought prematurely, we dismiss it for want of appellate jurisdiction. The tale follows.

## I.  BACKGROUND

This is our second intervention in this tangled matter. The architecture of the case is delineated in our earlier opinion in Watchtower Bible & Tract Society of New York, Inc. v. Sagardía de Jesús (Watchtower I), 634 F.3d 3, 6-8 (1st Cir. 2011), and we assume the reader's familiarity with that opinion. We rehearse here only those events that are necessary to place this appeal into perspective.

Puerto Rico has taken a unique approach to the creation of gated communities. Its Controlled Access Law (CAL), P.R. Laws Ann. tit. 23, §§ 64-64h, authorizes gated communities, called "urbanizations," which — unlike gated communities elsewhere — may

control access to public streets within their confines.  See Watchtower I, 634 F.3d at 6.  Once created, urbanizations are run by homeowners' associations.  A homeowners' association may regulate access by erecting fences or barriers with gates (manned or unmanned) for entry and egress.  See id.

Although the framework for creating urbanizations derives from the CAL, the affected municipalities — not the Commonwealth — are the source of permission to establish and operate particular urbanizations: "each municipality after a public hearing makes the decision whether to approve a permit application" for a specific urbanization.  Id. at 7.  The Commonwealth "does not direct the municipalities or urbanizations in their implementation of permits."  Id. at 7 n.4.

In a sense, the CAL is a contradiction in terms.  The streets within urbanizations remain public, and any restrictions imposed by a homeowners' association "shall not prevent or hinder residents from outside the community to use and enjoy sports, recreational and other community installations, nor from obtaining the services of private institutions such as schools, churches, hospitals, civic clubs and others, located in the community."  P.R. Laws Ann. tit. 23, § 64b(e).

In 2004, the appellants Watchtower Bible and Tract Society of New York, Inc. and Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc. brought suit under 42

U.S.C. § 1983, alleging that the controlled access regime unconstitutionally impeded their ability to pursue "a religious duty to share the Bible's message publicly and to proselytize from house to house."  Watchtower I, 634 F.3d at 6.  The suit, originally brought against the Commonwealth defendants,[1] was soon expanded to include thirty-three municipalities and urbanizations as additional defendants.

In Watchtower I, we determined that the CAL was constitutional on its face.  Id. at 12.  We also determined, however, that some municipalities and urbanizations were applying the law in ways that bore "unreasonably on Jehovah's Witnesses' access to public streets."  Id. at 13.  Consequently, we remanded the case to the district court "to take prompt action to bring the municipalities and urbanizations into compliance."  Id. at 17.

Some municipal defendants sought rehearing.  We rejected those requests and, in so doing, clarified the import of Watchtower I.  See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Sagardía de Jesús, 638 F.3d 81 (1st Cir. 2011) (order denying rehearing).  Pertinently, we explained:

> Without resolving claims against any specific municipality or urbanization, this court held [in Watchtower I] that further proceedings

---

[1]  The Commonwealth defendants, appellees here, are the Governor of Puerto Rico, the Secretary of Justice, the Commissioner of the Planning Board of Puerto Rico, and the Executive Director of the Office of Permit Management (formerly the Administrator of Regulations and Permits).

-4-

were required and outlined in skeleton form the principles that should guide the district court in structuring injunctive relief if and where it turned out to be appropriate.

. . . .

. . . [T]he panel made no determination as to the accuracy or typicality of obstructions to access alleged against any particular municipality or urbanization, and any municipality or urbanization is free on remand to urge that it did not improperly bar access or discriminate.

. . . [T]he panel decision made no determination as to how far municipalities themselves — by virtue of their permitting activities, possible involvement with exclusionary acts, or other entanglements — might properly be subject to injunctive relief or any other remedy.

Id. at 83.

On January 31, 2012, the district court held a remand hearing. The Commonwealth defendants noted that the constitutionality of the CAL had been upheld in Watchtower I and, on that basis, insisted that they should play no role in further proceedings. The district court expressed agreement with this view, concluding that it would serve no useful purpose for the Commonwealth defendants to remain as parties "at this time" and that the action against them should be dismissed. The next day, the court issued a declaratory judgment order (the Order) in which it formulated a plan for relief involving the municipal defendants and memorialized the dismissal of the Commonwealth defendants.[2]

_____

[2] We say "memorialized" because the record reveals that the district court came to its decision about the dismissal of the Commonwealth defendants during the remand hearing.

-5-

The appellants filed a notice of appeal. They also requested reconsideration of that portion of the Order that dismissed the Commonwealth defendants. After receiving briefs, the district court reaffirmed its original decision to dismiss the Commonwealth defendants. It explained that the case "only involve[d] as defendants several municipalities and their controlled access urbanizations," so that "the remedy this district court can issue . . . is not island-wide, but rather limited to the parties to this case." It added, however, that the dismissal was without prejudice and that "if circumstances should change requiring the presence of the Commonwealth, the court in the future will revisit the issue."

## II. DISCUSSION

"Federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but, rather, must appraise their own authority to hear and determine particular cases." Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998). "When a colorable question exists, an appellate court has an unflagging obligation to inquire sua sponte into its own jurisdiction." Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 155-56 (1st Cir. 2004). As such, "we have jurisdiction to determine the existence and extent of our own subject-matter jurisdiction." Subsalve USA Corp. v. Watson Mfg., Inc., 462 F.3d 41, 44 (1st Cir. 2006).

-6-

In the appellants' opening brief, they asserted that appellate jurisdiction existed because the Order was "final" within the purview of 28 U.S.C. § 1291. Doubting this premise, we issued a pre-argument order requiring supplemental briefing on the jurisdictional point. By the time of oral argument, the appellants had proposed three jurisdictional theories: first, that the Order was appealable as a final judgment; second, that it was appealable as a declaratory judgment; and third, that it had the practical effect of denying injunctive relief and was, therefore, interlocutory but immediately appealable. The Commonwealth defendants, who had not previously questioned appellate jurisdiction, contended in their supplemental brief that no jurisdiction existed.[3]

We consider each of the appellants' jurisdictional theories in turn.

## A. **Final Judgment.**

28 U.S.C. § 1291 vests courts of appeals with jurisdiction over "appeals from all final decisions of the district courts." "Ordinarily, a judgment is final (and, thus, appealable

---

[3] That the position taken by the Commonwealth defendants represents a deathbed conversion is of no consequence; "[o]rdinary raise-or-waive rules do not apply with respect to claims that a court lacks subject matter jurisdiction." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 5 (1st Cir. 2007). In any event, we would have an obligation to pursue the jurisdictional inquiry even if the Commonwealth defendants acquiesced in the appellants' claim of jurisdiction. See Charlesbank Equity Fund II, 370 F.3d at 155-56.

under [section 1291]) only if it conclusively determines all claims of all parties to the action." Nichols v. Cadle Co., 101 F.3d 1448, 1449 n.1 (1st Cir. 1996) (per curiam).

In this instance, the Order plainly did not resolve all claims against all parties. The district court, after issuing the Order, is continuing to engage in the complicated task of custom-tailoring remedies for particular urbanizations in particular municipalities. This is intricate work: the municipal defendants have not displayed a uniform approach to the permitting of urbanizations, and the urbanizations themselves have disparate features. The very existence of these ongoing proceedings in the district court is a clear indication that the Order cannot realistically be regarded as final.

This view of the Order makes sense. Were we to hold otherwise, we would trigger the unseemly spectacle of two courts competing simultaneously for the parties' attention. This would offend basic tenets of judicial administration: "[t]he filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam). Consequently, in the ordinary course "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case

-8-

simultaneously." Id. This paradigm "derives from the notion that shared jurisdiction almost always portends a potential for conflict and confusion." United States v. Brooks, 145 F.3d 446, 456 (1st Cir. 1998). "Allowing more than one court to take charge of a case at any given moment often disserves the interests of comity and judicial economy." Id.

The appellants attempt to justify concurrent jurisdiction here by invoking 28 U.S.C. § 2202, which authorizes "[f]urther necessary or proper relief based on a declaratory judgment or decree . . . against any adverse party whose rights have been determined by such judgment." They argue that simultaneous trial and appellate court jurisdiction may flourish in such a situation. See, e.g., United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 572-73 (5th Cir. 2005); Burford Equip. Co. v. Centennial Ins. Co., 857 F. Supp. 1499, 1502-03 (M.D. Ala. 1994). But section 2202 does not magically imbue a nonfinal order with an aura of finality, nor does it somehow create appellate jurisdiction where none exists.

That ends this aspect of the matter. We conclude, without serious question, that this court lacks appellate jurisdiction, here and now, under 28 U.S.C. § 1291.[4]

---

[4] To be sure, the appellants might have pursued an immediate appeal had they requested and received a certified partial final judgment under the procedural rule that allows a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties." Fed. R. Civ. P. 54(b); see Nystedt v.

## B.  Declaratory Judgment.

The appellants' next claim of appellate jurisdiction is easily dispatched.  They suggest that declaratory judgments are automatically appealable when issued.  That suggestion is unfounded: the Declaratory Judgment Act, 28 U.S.C. § 2201, simply is not a grant of jurisdiction.  See Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1230 (1st Cir. 1996); McCarthy v. Marshall, 723 F.2d 1034, 1036-37 (1st Cir. 1983).  That statute "merely defines the scope of available declaratory relief."  McCarthy, 723 F.2d at 1037.  Seen in this light, section 2201 cannot itself create a basis for appellate jurisdiction.

At any rate, this argument is a red herring.  The appellants are not seeking review of the declaratory portion of the Order.  Rather, they seek review of the portion of the Order memorializing the dismissal of the Commonwealth defendants.  The fact that this occurred simultaneously with the entry of a declaratory judgment does not through some mysterious alchemy transform the dismissal into a declaratory judgment.  Cf. William Shakespeare, Romeo and Juliet act 2, sc. 2 ("What's in a name? [T]hat which we call a rose [b]y any other name would smell as sweet . . . .").

---

Nigro, 700 F.3d 25, 29 (1st Cir. 2012).  Here, however, the appellants did not seek a certification under Rule 54(b), nor did the district court issue one.

## C. **Practical Effect.**

We come now to the appellants' most robust jurisdictional argument. They assert that because they sought injunctive relief in their complaint, the Order had the practical effect of denying an injunction. This is potentially significant because 28 U.S.C. § 1292(a)(1) confers jurisdiction over appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions."

As an exception to the finality principle, section 1292(a)(1) "must be strictly construed." Morales Feliciano v. Rullan, 303 F.3d 1, 6 (1st Cir. 2002). "Doubts as to [its] applicability . . . are to be resolved against immediate appealability." Id. at 7.

Orders explicitly denying injunctive relief are immediately appealable under section 1292(a)(1) without further inquiry. See Anderson v. City of Boston, 244 F.3d 236, 238 (1st Cir. 2001). Here, however, the Order does not explicitly deny injunctive relief. When an order does not explicitly deny injunctive relief, the right to an immediate appeal depends on whether the putative appellant can make three showings. First, the putative appellant must show that the lower court's action had the practical effect of denying injunctive relief. See Carson v. Am. Brands, Inc., 450 U.S. 79, 83-84 (1981); Fideicomiso de la Tierra del Caño Martín Peña v. Fortuño, 582 F.3d 131, 133-34 (1st Cir.

-11-

2009) (per curiam). Second, the putative appellant must show that the refusal of injunctive relief will cause serious (if not irreparable) harm. See Carson, 450 U.S. at 84; Anderson, 244 F.3d at 238; Kartell v. Blue Shield of Mass., Inc., 687 F.2d 543, 551 (1st Cir. 1982); see also Gardner v. Westinghouse Broad. Co., 437 U.S. 478, 480-82 (1978). Third, and finally, the putative appellant must show that the order can effectively be challenged only through an immediate appeal. See Carson, 450 U.S. at 84; Fideicomiso de la Tierra, 582 F.3d at 133. If any of these three showings fails, section 1292(a)(1) is not triggered. See Carson, 450 U.S. at 84; Fideicomiso de la Tierra, 582 F.3d at 133.

In this instance, the appellants cannot satisfy the first requirement. Thus, our inquiry stops there.

The foreclosure of injunctive relief about which the appellants complain is relatively narrow — the denial of a permanent injunction directed specifically at the Commonwealth defendants. But the district court has made pellucid that it has not foreclosed the possibility of such injunctive relief. At the remand hearing the court deferred the issue, observing that if injunctive relief became a desirable feature of a remedial plan, it would advise the parties and hold an evidentiary hearing. Similarly, in its order on reconsideration (which affirmed the dismissal of the Commonwealth defendants), the court emphasized that it was leaving the door open for possible future relief

-12-

against the Commonwealth defendants.  Consistent with this emphasis, the district court's dismissal of the Commonwealth defendants operates without prejudice, and the Commonwealth defendants acknowledge that they may be required at a later date to reenter the fray.

The district court has made a considered choice about how to proceed.[5]  Recognizing the pivotal role of the municipalities in the permitting process and the idiosyncracies of the urbanizations that dot the landscape, it is endeavoring to effectuate constitutionally compliant access on a municipality-by-municipality basis.  Ancillary to this choice, the court has dismissed the Commonwealth defendants provisionally but it has not ruled out an injunction against them (or others) should such relief prove useful in fashioning appropriate remediation.

The upshot is that the appellants have not demonstrated that the order of dismissal has the practical effect of refusing injunctive relief.  It follows inexorably that section 1292(a)(1) does not supply a hook on which the appellants can hang jurisdiction.  See Fideicomiso de la Tierra, 582 F.3d at 133-34.

### D.  A Loose End.

During earlier stages of this litigation, questions arose as to what role, if any, the Commonwealth police may play in

---

[5] Because we have no jurisdiction to reach the merits of this case, we take no view as to the appropriateness of that choice.

-13-

ameliorating the asserted harm. To distill the dispute to its bare essence, the appellants claim that the Commonwealth police refuse to assist Jehovah's Witnesses in gaining constitutionally required access to urbanizations; the Commonwealth defendants counter that the Commonwealth police stand ready to provide such assistance. At the remand hearing, the district court ordered the Commonwealth defendants to bring the decision in Watchtower I to the attention of the Governor, the Attorney General, and the Police Superintendent. It directed those three officials to notify the district court within thirty days "that they have read [the Watchtower I opinion] and they will take all necessary measures to enforce this, if there would be any violation."

At oral argument in this case, the Commonwealth defendants vouchsafed that the three officials had been apprised of Watchtower I as required. They conceded, however, that no certification of this fact had been made to the district court. They also conceded that none of the three officials had made the desired assurances to the district court. We instructed the parties to confer about this irregularity and to report in due course to the court below. We are confident that the district court, which is continuing to exercise jurisdiction over the case as a whole, will take appropriate steps with respect to this matter.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we dismiss the appeal, without prejudice, for lack of jurisdiction.

**Dismissed.**