# United States Court of Appeals
## For the First Circuit

No. 19-1212

CLARENDON NATIONAL INSURANCE COMPANY,

Plaintiff, Appellant,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

John W. Dennehy, with whom Dennehy Law was on brief, for
appellant.
David W. Zizik, with whom Sulloway & Hollis PLLC was on brief,
for appellee.

April 1, 2020

**TORRUELLA**, **Circuit Judge**.    In this diversity case, Clarendon National Insurance Company ("Clarendon") appeals the district court's entry of summary judgment against its claim that Philadelphia Indemnity Insurance Company ("Philadelphia") breached its contract with Lundgren Management Group, Inc. ("Lundgren") when Philadelphia declined to tender a defense to Lundgren, whom Philadelphia had insured from 2007 to 2008.  Lundgren had assigned these claims to Clarendon.  The district court determined that because the property damage allegations were excluded by the prior policy period exclusion, the complaint did not give rise to a duty to defend.    Furthermore, Clarendon challenges the summary dismissal of its additional claims for contribution and alleged violations of Massachusetts General Laws, chapters 93A and 176D, which the district court concluded should also be dismissed because they were premised on the incorrect notion that Philadelphia had breached its duty to defend.   After careful consideration, we affirm.

## I.   Background

### A.  Factual Background

Clarendon, a New York corporation, provided indemnity insurance to Lundgren, a building management corporation, from June 24, 2004, to June 24, 2005.  Subsequently, Philadelphia, a Pennsylvania corporation, provided insurance for Lundgren from

-2-

September 1, 2007, to September 1, 2008.  Philadelphia's insurance policy with Lundgren contained the following provision that excludes coverage for damage beginning prior to the inception of the insurance policy:

> b. This insurance applies to "bodily injury" and "property damage" only if:
>  . . . .
> (3) Prior to the policy period, no insured listed . . . and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

On February 12, 2009, Denise Doherty ("Doherty"), a resident in a Lundgren-managed building, filed a complaint in the Superior Court for Suffolk County, Massachusetts, against the Admirals Flagship Condominium Trust ("Admirals"), certain named trustees of Admirals, Lundgren, and Construction by Design, LTD ("CBD").  In the complaint, Doherty asserted negligence claims against Lundgren stemming from alleged water infiltration into her condominium.  On April 29, 2009, Doherty filed an amended complaint that proffered new factual information and asserted additional claims of misrepresentation, nuisance, trespass, and breach of contract under Massachusetts law ("the Underlying Complaint").

-3-

According to the Underlying Complaint, in February 2002, Doherty purchased a condominium unit in a building owned by Admirals. Admirals contracted with Lundgren to serve as the property manager of the building. In turn, Lundgren contracted CBD to maintain and repair the building. "During the year 2004[,] leaks developed in the roof above [Doherty's] unit and/or the exterior area of the structure just below the roof line." Doherty alleged that subsequent repairs to the ceiling were "not made in a timely or appropriate manner." In 2005, a Lundgren employee notified Doherty that the threshold leading to her condominium's deck was rotting. In February 2006, Doherty discovered a mushroom and water infiltration on "said threshold" and notified Lundgren. At that time, Lundgren asked CBD to replace the rotting threshold. According to Doherty, CBD "did not do this repair in a timely manner and left the debris exposed in [her] bedroom."

On March 10, 2006, Gordon Mycology Laboratory, Inc., hired by Lundgren to conduct mold testing, "issued a report disclosing the presence of hazardous mold in unsafe levels in [Doherty's] unit caused by water intrusions and chronic dampness." Doherty complained that although Lundgren had assured her that the mold problem would be resolved, the cleanup was "ineffectual." According to Doherty, "Lundgren . . . promised [her] that [CBD] would stop the leaks into the unit but it [did] not [do] so." On

September 2, 2008, Doherty's doctor ordered her to leave the condominium and not to return unless the mold was eliminated and the leaks were repaired.

Doherty alleged that she suffered damages as a result of the defendants' actions, including adverse health effects, loss of personal belongings, loss of her home, loss of value to her condominium unit, and loss of income.

On June 30, 2009, shortly after the Underlying Complaint was filed, Lundgren tendered the defense of the Underlying Complaint to Philadelphia. In a letter dated July 24, 2009, Philadelphia denied coverage. It stated that "there are no allegations in the complaint that occurred within our policy period." In addition, it stated that the "damages sought in this matter pertain to exposure to mold," yet, "the policy specifically excludes 'property damage' . . . and any damages that result from 'fungi' as defined in the policy"[1] (hereinafter the "mold exclusion"). Clarendon, on the other hand, financed the defense of Lundgren with a Reservation of Rights to exclude mold and fungus damage.

------

[1] The policy defined "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."

On October 7, 2014, North American Risk Services, Clarendon's third-party claims administrator, demanded that Philadelphia contribute to the cost of defending Lundgren. After the Doherty case eventually settled, Philadelphia again denied Clarendon's claim for contribution in a letter dated November 3, 2014, admitting that "potentially" the mold exclusion did not apply to the allegations in the Underlying Complaint, but insisting that "the alleged damage occurred prior to the inception of [Philadelphia]'s policy, . . . during the Clarendon policy period." On or about March 17, 2015, Clarendon received an assignment from Lundgren of all the claims arising from the Doherty matter.

## B. Procedural Background

On November 29, 2017, Clarendon filed suit against Philadelphia in the Superior Court for Suffolk County, Massachusetts, based upon Philadelphia's denial of coverage to Lundgren. Clarendon brought three claims: "Contribution" (Count I), "Breach of Contract" (Count II), and "93A/176D Violations" (Count III). In essence, Clarendon's complaint stated that Philadelphia breached its contract with Lundgren when it "improperly denied coverage for defense and indemnity," failed to contribute "its pro rata share for either coverage," and "failed to investigate the matter." On December 21, 2017, Philadelphia removed the case to the United States District Court for the

District of Massachusetts.

The parties agreed to discovery in phases. Discovery Phase I was for the purpose of collecting information related to Philadelphia's duty to defend Lundgren, and later phases were scheduled for remaining issues in the case. On May 21, 2018, Philadelphia served its Rule 26(a)(1) initial disclosures on Clarendon. Clarendon did not provide its initial disclosures and did not conduct any discovery. Philadelphia then filed a motion for summary judgment on July 2, 2018, which Clarendon opposed. On January 8, 2019, the district court granted summary judgment for Philadelphia on all claims. Clarendon Nat'l Ins. Co. v. Phila. Indem. Ins. Co., No. 17-12541, 2019 WL 134614, at *4 (D. Mass. Jan. 8, 2019). Regarding the breach of contract claim -- which was premised on the allegations that Philadelphia breached its contract with Lundgren when it "improperly denied coverage for defense and indemnity" -- the court noted that Philadelphia's policy only covered damages caused by "bodily injury" or "property damage" that occurred during the policy period, and that did not result from the "continuation, change or resumption" of "bodily injury" or "property damage" "deemed to have been known prior to the policy period." Id. at *3 (citation omitted). The court further noted that the Underlying Complaint alleged damages that began in 2004, "well before the beginning of Philadelphia's policy

-7-

period on September 1, 2007," and continued throughout the years. Id. Accordingly, the court concluded that the damages were not covered by Philadelphia's policy. Id.

The court also rejected Clarendon's contention that the Underlying Complaint could be read to suggest that the original leaks arising prior to the policy period were adequately repaired and "new leaks" had arisen during the period of Philadelphia's policy, reasoning that the Underlying Complaint clearly states that "the leaks and resulting problems were continuous throughout the relevant period," and "Philadelphia's policy also excludes coverage for damage that resumes during the policy period if the damage began and was known before the period." Id. Furthermore, the court noted that the Underlying Complaint "does not allege that Lundgren's repair efforts were ever successful at abating the leaks entirely, [or] even temporarily, such that leaks occurring during the policy period could have been considered new leaks." Id. The court concluded that, because the Underlying Complaint did not contain allegations "'reasonably susceptible of an interpretation that they state' a claim covered by Philadelphia's policy," Philadelphia did not have a duty to defend or indemnify its insured and, thus, Clarendon's breach of contract claim failed. Id. at *4 (quoting Cont'l Cas. Co. v. Gilbane Bldg. Co., 461 N.E.2d 209, 212 (Mass. 1984)).

Finally, the court held that Clarendon's additional claims for contribution and under Massachusetts General Laws, chapters 93A and 176D also failed because they were premised on the incorrect notion that Philadelphia had breached its duty to defend and indemnify Lundgren in the Doherty case. Id. Accordingly, the court entered summary judgment dismissing Clarendon's complaint. Id.

On January 17, 2019, Clarendon moved for reconsideration, which the district court denied on January 24, 2019. Clarendon Nat'l Ins. Co. v. Phila. Indem. Ins. Co., No. 17-12541, 2019 WL 319993, at *2 (D. Mass. Jan. 24, 2019). Thereafter, on February 25, 2019, Clarendon filed a timely notice of appeal.[2]

## II.  Discussion

We review a district court's grant of summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir.

---

[2]  Although Clarendon's notice of appeal included the court's ruling on its Motion for Reconsideration, Clarendon failed to meaningfully discuss that ruling in its appellate briefs.  As such, any arguments regarding the court's ruling on its Motion for Reconsideration are waived.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

2015); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). Summary judgment may be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015) (quoting Barclays Bank PLC v. Poynter, 710 F.3d 16, 19 (1st Cir. 2013)). The party opposing summary judgment "bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)). "For this purpose, [it] cannot rely on 'conclusory allegations, improbable inferences, acrimonious invective, or rank speculation.'" Id. (quoting Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010)).

## A. Duty to Defend

On appeal, Clarendon argues that the district court erred in its interpretation of Massachusetts law and its dismissal of Clarendon's breach of contract claim, which Clarendon contends was premised on the alleged breach of Philadelphia's duty to defend Lundgren. Specifically, citing Metropolitan Property and Casualty Insurance Company v. Morrison, 951 N.E.2d 662 (Mass. 2011) ("Metropolitan"), Clarendon posits that under Massachusetts law,

-10-

"there is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." Id. at 667 (quoting Billings v. Commerce Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010)). Instead, according to Clarendon, a duty to defend should be found unless "the express language in the complaint unequivocally demonstrate[s] that the insurer does not owe coverage." And, here, its argument goes, the Underlying Complaint's generalized allegations "can be read to infer coverage," thus triggering Philadelphia's duty to defend Lundgren in the suit.

In support of the contention that the Underlying Complaint is reasonably susceptible to an interpretation entailing coverage, Clarendon argues that the Underlying Complaint specifies the date for only one leak: a "leak near a roofline," which occurred "in 2004." It emphasizes that there is no "specific information as to the time and the location of other leaks," and that the Underlying Complaint fails to provide information about "when each leak occurred, what measures were taken to repair them, and whether any of the repairs were effective." Thus, in Clarendon's view, the Underlying Complaint's assertion of "several leaks" suggests that there were multiple issues over time. Accordingly, this assertion is reasonably susceptible to an interpretation in which "a new leak occurr[ed] during

-11-

Philadelphia's policy period." It further argues that even if the exact same 2004 leak resumed after CBD repaired it, "[a] reasonable inference is that Lundgren would anticipate the repairs to be corrected and would not know that they would reoccur after repairs were undertaken."

In addition, Clarendon posits that Philadelphia, as an insurer, had an independent duty to investigate the "claim or loss" regardless of the language in the Underlying Complaint. To comply with that duty, Clarendon asserts that Philadelphia should have "take[n] steps to obtain a copy of the [original] complaint" and should have "sp[oken] to its insured." According to Clarendon, Philadelphia's failure to investigate, to file an interpleader action, and to draw inferences in favor of the insured, together warrant a "remand[] in its entirety" because each of those failures amounts to a breach of the duty to defend.

Finally, Clarendon argues that Philadelphia should be estopped from denying coverage by relying on the "known loss" justification -- the policy provision establishing that damages occurring during the policy period are not covered if they result from the "continuation, change or resumption," of damages known prior to the policy period -- because, according to Clarendon, Philadelphia did not rely on those grounds to deny coverage in 2009 when it initially considered Lundgren's claim. Clarendon

-12-

posits that, because Philadelphia denied coverage in 2009 based on the "mold exclusion" and improperly induced reliance on this exclusion, Philadelphia cannot now shift its denial justification to an "entirely new" "known loss" justification in its 2014 letter. According to Clarendon, Philadelphia should have initially defended its insured and then sought a declaratory judgment on its lack of coverage claim. We address each argument in turn.

The parties agree that Massachusetts law governs. Under Massachusetts law, an insurer's duty to defend "is determined based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint." Metropolitan, 936 N.E.2d at 667; Bos. Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1160 (Mass. 1989). To establish an insurer's duty to defend and investigate allegations against an insured, a plaintiff must demonstrate that the "allegations in [the underlying complaint] are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Metropolitan, 951 N.E.2d at 667 (quoting Billings, 936 N.E.2d at 414). The underlying complaint need not "unequivocally make out a claim within the coverage," but rather, "need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage,"

-13-

Billings, 936 N.E.2d at 414 (quoting Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 341 (Mass. App. Ct. 1983)), regardless of "the possibility that the underlying claim may ultimately fail, or that the merits of the claim are weak or frivolous." Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 106 N.E.3d 572, 576 (Mass. 2018). Where there is uncertainty "as to whether the pleadings include or are reasonably susceptible to an interpretation that they include a claim covered by the policy terms," the uncertainty "is resolved in favor of the insured," and the insurer's duty to defend will attach "until [the insurer] obtains a declaratory judgment of no coverage." Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co., 991 N.E.2d 638, 642 (Mass. 2013).

However, where the allegations within the underlying complaint "lie expressly outside the policy coverage and its purpose," an insurer is relieved of its duty to defend and investigate. Metropolitan, 951 N.E.2d at 668 (quoting Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003)). Additionally, "[e]ven where the allegations in the complaint state or roughly sketch a claim covered by" an insured's policy, no duty to defend and investigate arises if "there is 'undisputed, readily knowable, and publicly available information' in court records that demonstrates that the insurer has no duty to

defend" and if "there is 'an undisputed extrinsic fact that takes the case outside the coverage and that will not be litigated at the trial of the underlying action.'"  Id. (quoting Billings, 936 N.E.2d at 200 n.8, 205).  Moreover, although an initial complaint may contain allegations which give rise to a duty to defend, the duty no longer exists when the complaint is amended to remove the triggering allegations.  See Herbert A. Sullivan, Inc., 788 N.E.2d at 531.

A close read of the Underlying Complaint and the record shows that the district court did not err by granting summary judgment for Philadelphia on the duty to defend issue.  Examined according to Massachusetts law, the allegations in the Underlying Complaint are not "reasonably susceptible of an interpretation that states or roughly sketches a claim covered" by Philadelphia's policy.  Metropolitan, 951 N.E.2d at 667 (quoting Billings, 936 N.E.2d at 414). The parties do not dispute that Philadelphia's policy expressly excludes coverage for property damage known prior to Philadelphia's period of coverage.  To establish that the Underlying Complaint "roughly sketches" a potentially covered event, Clarendon points to small differences in grammatical structure between paragraphs and ambiguities arising from missing information about the time and place of various leaks.  Neither of these assertions give rise to a rough sketch of a covered claim.

-15-

Clarendon's reliance on the use of the word "leak" (in singular) in paragraph seventeen of the Underlying Complaint to suggest that the use of the term "leaks" in other paragraphs[3] could reasonably be interpreted as referencing new distinct leaks arising from different structural problems is inconsistent with a reading of the Underlying Complaint as a whole. Paragraph sixteen of the Underlying Complaint clearly states that "[d]uring the year 2004 <u>leaks</u> developed in the roof above [Doherty's] unit and/or the exterior area of the structure just below the roof line." (Emphasis added). The Underlying Complaint then goes on to discuss the water infiltration problems caused by these "leaks" that started in 2004, including the fact that "[t]he roof leak caused ceiling cracks and loosening plaster in [Doherty's] unit," as stated in paragraph seventeen. Contrary to Clarendon's contentions, the fact that the Underlying Complaint does not mention the precise location, time, and repairs undertaken is insufficient to show that Doherty's claim "possib[ly] . . . falls within the insurance coverage." See <u>Billings</u>, 936 N.E.2d at 414. The Underlying Complaint unambiguously indicates that the 2004 repairs were not made in an "appropriate manner," and that Doherty had continued to request "complete repair of all leaks . . . to no

---

[3] See Underlying Complaint at ¶¶ 16, 24, 26, and 27 ("leaks"); 17 ("leak"); 28 ("all leaks").

-16-

avail." See Underlying Complaint at ¶¶ 17 and 28. Further, it references "chronic dampness" occurring at least as early as March 10, 2006, before the inception of Philadelphia's policy. See Underlying Complaint at ¶¶ 23 and 28. Nothing in the Underlying Complaint is reasonably susceptible to an interpretation in which the leaks were resolved prior to the inception of Philadelphia's policy. Clarendon, therefore, has failed to show that the Underlying Complaint provides the "rough sketch" of a covered event necessary to trigger the duty to defend. Metropolitan, 951 N.E.2d at 667.[4]

Furthermore, contrary to Clarendon's contentions, Philadelphia did not have an independent duty to investigate claims

---

[4] Although its arguments are not a model of clarity, Clarendon also seems to suggest that Lundgren could rely on CBD to resolve the leaks, negating its knowledge of a problem, and thus each resumption would be a "new leak" or new "property damage" under the policy. This argument, however, is not consistent with the plain terms of the insurance policy, which provides in relevant part: "If such a listed insured or authorized 'employee' knew prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." There is no dispute that the Underlying Complaint alleges that Lundgren initially knew about the property damage and made representations about their repair. See Underlying Complaint at ¶¶ 18, 24. Regardless of its reliance on CBD to effectuate repairs and whether Lundgren knew or reasonably believed them to be effective, under the plain terms of the policy, the damages would be a "resumption of such 'property damage'" of which Lundgren was initially aware.

that were not reasonably susceptible of an interpretation that states or roughly sketches a claim covered by its policy. See id. at 667-68 ("[W]hen the allegations in the underlying complaint 'lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate.'" (quoting Billings, 936 N.E.2d at 414)); see also Nascimento v. Preferred Mut. Ins. Co., 513 F.3d 273, 277 (1st Cir. 2008). While Clarendon is correct that Massachusetts law does look to facts "known or readily knowable by the insurer" as well as to the underlying complaint to determine whether a duty to defend has been triggered, information that is "readily knowable" is distinct from the duty to investigate. Metropolitan, 951 N.E.2d at 667-68 (quoting Billings, 936 N.E.2d at 414, 417). This Court has held that information known or readily knowable does not independently trigger the duty to defend under Massachusetts law when the complaint does not "adumbrate a claim." Open Software Found., Inc. v. U.S. Fidelity & Guar. Co., 307 F.3d 11, 15-16 (1st Cir. 2001) (internal quotation marks omitted) ("Massachusetts courts generally use extrinsic facts . . . to aid interpretation of the complaint, and not as independent factual predicates for a duty to defend. . . . We do not consider them as independent grounds for a duty to defend."); accord Bos. Symphony, 545 N.E.2d at 1160-61. Philadelphia therefore did not breach either its duty to

-18-

investigate or its duty to defend Lundgren.

Finally, we refuse to address, on waiver grounds, the merits of Clarendon's argument that Philadelphia is estopped from relying on the "known loss" justification to deny coverage because, according to Clarendon, Philadelphia changed its grounds for denial of coverage between 2009 and 2014. Contrary to its contentions, Clarendon did not properly raise that claim in the district court. While Clarendon may have flagged discrepancies between the 2009 and 2014 denial-of-coverage letters in the district court, it never affirmatively linked these discrepancies to an estoppel argument nor explained how they resulted in Lundgren's reliance. A litigant's mere mentioning of facts that could potentially make up a claim is insufficient to effectively raise the argument. United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("Passing allusions are not adequate to preserve an argument in either a trial or appellate venue.").

**B. Claims for contribution and for alleged violations of Massachusetts General Laws, chapters 93A and 176D**

Next, Clarendon challenges the district court's entry of summary judgment dismissing its contribution claim (Count I) and its claim for alleged violations of Massachusetts General Laws, chapters 93A and 176D (Count III).[5] Despite mentioning in its

---

[5] Clarendon interchangeably refers to "consumer protection claim"

-19-

opening brief's statement of the case that it was seeking appellate review of the dismissal of its contribution claim, Clarendon did not discuss this elsewhere in its briefs. We thus deem the contribution claim waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Even if not waived, Clarendon's challenge to the summary dismissal of its contribution claim would fail inasmuch as it was premised on the incorrect notion that Philadelphia had breached its duty to defend and to indemnify Lundgren in the Doherty case and thus needed to proportionately contribute to Clarendon, who had satisfied an obligation common to both Clarendon and Philadelphia. See Ins. Co. of the State of Pa. v. Great N. Ins. Co., 45 N.E.3d 1283, 1286 (Mass. 2016) ("Under the doctrine of equitable contribution, where multiple insurers provide coverage for a loss of an insured, an insurer who pays more than its share of the costs of defense and indemnity may require a proportionate contribution from the other coinsurers.").

We now turn to the remaining claim. Clarendon first argues that the district court improperly dismissed its claim for alleged violations of Massachusetts General Laws, chapters 93A and 176D because "Philadelphia's Motion for Summary Judgment did not seek dismissal of [that] claim" and, thus, "Clarendon was not

---

and "bad faith claim" to describe Count III.

afforded an opportunity to oppose [its] dismissal." In addition, Clarendon claims that if Philadelphia had conducted an investigation, "it would have learned that Lundgren did not 'know' of an ongoing loss at the time [that] the [Underlying] Complaint was filed because CBD had undertaken repairs and abated several issues." It asserts that the Underlying Complaint "includes allegations of personal property damage caused by water alone, which would not result in the personal property damage being excluded by the mold exclusion." It maintains that both the failure to investigate and the 2009 denial on the basis of the mold exclusion constitute bad faith that survives regardless of whether Philadelphia had a duty to defend. We address Clarendon's procedural and substantive challenges in turn.

Contrary to Clarendon's contentions, in its motion for summary judgment, Philadelphia did request the dismissal of Clarendon's claim for alleged violations of Massachusetts General Laws, chapters 93A and 176D.[6] Specifically, it stated:

> "Phase 1" is intended to focus on the duty to defend issue. However, because [Philadelphia] had no duty to defend the insureds in the underlying Suffolk Superior Court action, Clarendon's claims against [Philadelphia] in the other two counts (for equitable contribution and alleged violations of Chapter 93A/176D) fail as a matter of law, and should also be dismissed.

---

[6]   So did Philadelphia request the dismissal of Clarendon's contribution claim.

-21-

Philadelphia also briefed the issue in its memorandum of law in support of summary judgment. There, Philadelphia stated that if the district court were to grant summary judgment as to the duty to defend issue, then:

> [A]s a matter of law Clarendon cannot prove that it is entitled to "contribution" as alleged in Count I, or that [Philadelphia] violated M.G.L. ch. 93A or 176D [ ] as alleged in the third count . . . of Clarendon's Complaint. The Court should therefore grant summary judgment and dismiss the Plaintiff's Complaint in its entirety.

Philadelphia then proceeded to discuss why those two claims failed as a matter of law. The issue was thus squarely before the district court, and Clarendon had the opportunity to address it. In fact, Clarendon did address Philadelphia's arguments in its opposition to summary judgment, including the merits of its claim for alleged violations of chapters 93A and 176D.[7] Accordingly, Clarendon's contention that the district court abused its discretion in dismissing Count III without giving it an opportunity to oppose such dismissal lacks merit.

We now turn to Clarendon's substantive challenge. Massachusetts General Laws chapter 176D, section 2 prohibits insurance providers from engaging in "an unfair method of

---

[7] Clarendon also addressed the merits of its contribution claim, stating that "[t]he contribution claim [Count I] survives the Motion because the defense is based upon Philadelphia's [duty to defend] argument succeeding, and that argument fails."

competition or an unfair or deceptive act or practice in the business of insurance," while section 3(9) provides specific instances of conduct that violate this mandate.[8] Mass. Gen. Laws ch. 176D, §§ 2, 3(9). Massachusetts General Laws chapter 93A, the Massachusetts Consumer Protection Law, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. Laws ch. 93A, § 2(a), and "provides a cause of action for business plaintiffs injured by unfair trade practices," Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 9 (1st Cir. 2000); Mass. Gen. Laws ch. 93A, § 11.[9] "For a consumer plaintiff, a violation of

---

[8] Neither party specifically points to a provision in chapter 176D, section 3, for the purpose of this appeal. Presumably, Clarendon's claims arise under sections 3(9)(a) (prohibiting "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue") and 3(9)(n) (prohibiting "failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim").

[9] Mass. Gen. Laws ch. 93A, § 11 states that:

> Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring an action in the superior court . . . whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an injunction, as the

-23-

chapter 176D, section 3(9) constitutes a violation of chapter 93A," whereas "a plaintiff engaged in 'trade or commerce,' [such as Clarendon,] may only use a violation of chapter 176D as evidence of a chapter 93A violation." River Farm Realty Tr. v. Farm Family Cas. Ins. Co., 943 F.3d 27, 37 (1st Cir. 2019) (citing Polaroid Corp. v. Travelers Indem. Co., 610 N.E.2d 912, 917 (Mass. 1993)). Under both chapter 176D and chapter 93A, insurers are "held to the duty of good faith and fair dealing." McGovern Physical Therapy Assocs., LLC v. Metro. Prop. & Cas. Ins. Co., 802 F. Supp. 2d 306, 315 (D. Mass. 2011). To establish a claim of bad faith, a plaintiff must produce factual evidence of the defendant's knowledge and intent. O'Leary-Alison v. Metro. Prop. & Cas. Ins. Co., 752 N.E.2d 795, 797 (Mass. App. Ct. 2001). Although an insurer's denial of coverage based on an unreasonable interpretation of policy terms may constitute bad faith, "plausible, although ultimately incorrect" interpretations of an insured's policy coverage do not. See Bos. Symphony, 545 N.E.2d at 1160.

Clarendon's claim is premised on Philadelphia's alleged failure to investigate the allegations in the Underlying Complaint and to adequately inform its insured of the basis for the denial. We have already rejected Clarendon's failure to investigate claim. We now similarly reject Clarendon's contention that Philadelphia

court deems to be necessary and proper.

-24-

failed to adequately inform its insured of the basis for its denial of coverage. We note that in its 2009 letter, Philadelphia grounded its denial not only on the mold exclusion, but also on the fact that the allegations included in the Underlying Complaint had occurred outside of the coverage period. It advised that "there are no allegations in the complaint that occurred within our policy period." That, by itself, dooms Clarendon's contentions that Philadelphia violated Mass. Gen. Laws chs. 93A and 176D. See Manganella v. Evanston Ins. Co., 700 F.3d 585, 589-90, 595 (1st Cir. 2012) (holding -- where the insurer had denied coverage on one ground, but the denial letter "also adverted, without elaboration," to a policy exclusion -- that because the "[insurer's] denial of coverage was justified by the [policy] [e]xclusion, [plaintiff's] claims [for alleged violations of Mass. Gen. Laws chs. 93A and 176D could] not proceed under the theory that the denial of coverage was wrongful"); Bos. Symphony, 545 N.E.2d at 1160 (no 93A violation where disclaimer of coverage was incorrect but not "unreasonable," nor in "bad faith" or for "ulterior motives"); Gulezian v. Lincoln Ins. Co., 506 N.E.2d 123, 127 (Mass. 1987) ("An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of [Mass. Gen. Laws ch.] 93A"); see also Brazas Sporting Arms,

-25-

220 F.3d at 10 ("Where . . . the insurer properly denied coverage, there can be no violation of chapter 176D."). Accordingly, the district court did not err in granting summary judgment against Clarendon on its claim for alleged violations of chapters 93A and 176D.

### III. Conclusion

For the foregoing reasons, we affirm the district court's summary judgment order.

**Affirmed.**