# United States Court of Appeals
## For the First Circuit

No. 24-1660

FEDERATED MUTUAL INSURANCE COMPANY,

Plaintiff, Appellant,

v.

PETERSON'S OIL SERVICE, INC.; HOWARD WOOD PETERSON, JR.; KRISTEN PETERSON HALUS; SHEENA MARANDINO; SEAN MARANDINO; NANCY CARRIGAN; CLAIRE FREDA; KELLEY FREDA; ALICE HART; ROBERT F. HART; TORRE MASTROIANNI; and CONGREGATION BETH ISRAEL OF WORCESTER,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Montecalvo and Aframe, Circuit Judges,
and Vélez-Rivé,* District Judge.

Charles E. Spevacek, with whom Alexander V. Tibor, Meagher & Geer, P.L.L.P., Eric B. Hermanson, Austin D. Moody, and White and Williams LLP, were on brief, for appellant.

Louis M. Ciavarra, with whom AiVi Nguyen, Jared A. Fiore, Brian J. Edmonds, and Prince Lobel Tye LLP, were on brief, for appellees Peterson's Oil Service, Inc., Howard Wood Peterson, Jr.,

---

* Of the District of Puerto Rico, sitting by designation.

and Kristen Peterson Halus.

Jeffrey S. Strom, with whom John Regan, Regan Strom, P.C., Edward Foye, and Arrowood LLP, were on brief, for appellees Sheena Marandino, Sean Marandino, Nancy Carrigan, Claire Freda, Kelley Freda, Alice Hart, Robert F. Hart, Torre Mastroianni, and Congregation Beth Israel of Worcester.

—————————

September 8, 2025

—————————

**MONTECALVO, Circuit Judge.** Plaintiff-appellant Federated Mutual Insurance Company ("Federated") appeals the district court's adverse summary judgment rulings in this declaratory judgment suit. Federated had sought a declaratory judgment saying that it had no duty to defend or indemnify its insured, defendant-appellee Peterson's Oil Service, Inc. ("Peterson's"), in an ongoing Massachusetts state court class action brought by aggrieved Peterson's customers. Federated asserted that coverage was foreclosed under the terms of Peterson's insurance policy because Peterson's knew about the underlying state court suit before coverage commenced. The district court disagreed and denied summary judgment for Federated regarding its duty to defend, then granted partial summary judgment to Peterson's on the issue. It determined that, because Peterson's did not know about all of the damage alleged in the state case before the coverage period began, basic principles of insurance law required Federated to defend the entire suit. We agree that Federated has a duty to defend and, therefore, we affirm.

## I. Factual and Procedural Background

This case arises from an ongoing Massachusetts state class action. See Marandino v. Peterson's Oil Serv., Inc., No. 1985-CV-0792 (Mass. Super. Ct.). In March 2019, customers of Peterson's served the company with a demand letter and complaint alleging that, beginning in 2012, Peterson's had added biodiesel

fuel to the home heating oil it sold them in proportions that exceeded industry standards and harmed their heating equipment. The state plaintiffs alleged that Peterson's knew about the harm caused by the high biodiesel content because the company's service department had received multiple customer complaints about the biodiesel-enriched oil and, in February 2019, Howard Peterson, Jr. (Peterson's owner) had been confronted with allegations about the defective oil on a local TV news program. The state court eventually certified a class comprised of two subclasses: one of customers who received heating oil containing more than five percent biodiesel from 2012 to February 2019, and another of customers who received such heating oil from March 2019 to the "present."

Federated had not insured Peterson's in March 2019 when Peterson's first received notice of the suit. Rather, Federated first insured Peterson's under policies that went into effect on July 5, 2019. The insurance policies relevant to this dispute include a Commercial General Liability ("CGL") policy and an umbrella policy. The CGL policy imposes on Federated a "duty to defend the insured against any 'suit' seeking" "damages because of . . . 'property damage' to which this insurance applies." However, the policy only covers "property damage" that "occurs during the policy period" if, "[p]rior to the policy period, no insured . . . knew that the . . . 'property damage' had occurred,

in whole or in part" (the "known loss" provision). "Property damage" under the policy is caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." If the insured "knew, prior to the policy period, that the . . . 'property damage' occurred, then any continuation, change or resumption of such . . . 'property damage' during or after the policy period will be deemed to have been known prior to the policy period" (the "loss-in-progress" provision). In addition, the insured is "deemed" to know that property damage occurred when the insured "[r]eceives a written or verbal demand or claim for damages because of the . . . 'property damage'" or "[b]ecomes aware by any other means that . . . 'property damage' has occurred or has begun to occur" (the "deemer" clause). The umbrella policy, for its part, provides additional insurance limits for property damage that is covered by the CGL policy.

In September 2021, Peterson's asked Federated to defend it in the state class action. Federated refused, citing the known loss and loss-in-progress provisions and the "deemer" clause. Federated interpreted those provisions to relieve it of its obligation to provide Peterson's with a defense because Peterson's knew about the state case before coverage commenced.

In April 2022, Federated initiated this diversity action in the federal district court in Massachusetts seeking a

declaration that it had no duty to defend or indemnify Peterson's in the state case. Federated also named some of the state plaintiffs as defendants: Sheena Marandino; Sean Marandino; Nancy Carrigan; Claire Freda; Kelley Freda; Alice Hart; Robert F. Hart; Torre Mastroianni; and Congregation Beth Israel of Worcester (collectively, "claimants").[1]

In November 2022, claimants filed a counterclaim in the district court seeking a declaratory judgment "that [Federated] is obligated to pay for all damages [claimants] and the Class are awarded in the [state court action]," treble damages under Massachusetts consumer protection law, and attorney's fees.

Federated moved for summary judgment. On September 21, 2023, the district court partially granted and partially denied the motion. It determined that the plain language of the known loss and loss-in-progress provisions meant that "if [Peterson's] w[as] aware of property damage that began prior to July 5, 2019 . . . , there is no coverage for any continuation of that damage during the policy period." It determined that Peterson's was aware of damage suffered by the class of customers who received heating oil prior to July 5, 2019 (the start of the policy period) by virtue of the demand letter, class action complaint, and media

---

[1] Howard Peterson, Jr. and Kristen Peterson Halus, who are principals of Peterson's, are also named as defendants in this action.

coverage.  But the district court declined to treat all class members as a "monolith" and, instead, found that Peterson's did not know about the damage incurred by members who received heating oil for the first time <u>after</u> July 5, 2019.  It noted that "Federated has not cited any cases holding that similar known-loss provisions allow the Court to deem the policyholder aware of damage to class members which began after the insurance policy's inception, based on knowledge of damage to other class members prior to inception."  To the contrary, it reasoned that the plain language of the known loss provision could not apply to members who received heating oil for the first time after the policy period began.  The district court concluded that, because Federated has a duty to defend the claims of class members who received high-biodiesel oil for the first time during the coverage period, the "in for one, in for all" principle required it to defend the whole suit.  The district court accordingly denied Federated's summary judgment motion with respect to its claim that it had no duty to defend Peterson's.[2] It did not dispose of the case, however, as it found that Federated's "motion as to its duty to indemnify is not yet ripe."

About two months later, Federated sought clarification as to whether the summary judgment order required its immediate

_____

[2] The district court also granted partial summary judgment to Federated on an issue about an auto policy and on counterclaims for unfair insurance claim settlement practices.  Neither of these issues is before us.

- 7 -

participation in the defense of the underlying case. Federated stated that, in its view, the order had "rejected the arguments [it] made against a defense obligation . . . [but] did not compel [it] to participate immediately in Peterson's defense." To do so, per Federated, "some further explicit order would be required by the [district court]." On June 17, 2024, the district court entered a "clarif[ying]" electronic order. Noting Federated's position, the district court, sua sponte, granted summary judgment to Peterson's as to Federated's duty to defend.

On July 12, 2024, the district court entered another electronic order reading, "[g]iven the parties' agreement that the indemnification issue is not ripe, that portion of Federated's complaint is DISMISSED without prejudice." Further, the district court declined to enter "piecemeal" judgment regarding Federated's duty to defend. On January 24, 2025, the district court entered another electronic order explaining, in relevant part, that it had "declined to enter 'piecemeal' judgment . . . as to the 'duty to defend' matter, understanding that the 'duty to indemnify' issue, which is not currently ripe, might be re-asserted by the insurers after the resolution of the Underlying Action." The January order further explained that:

> Although this Court understands that its use of "dismissed without prejudice" in addressing the indemnification issue may have caused confusion, the Court purposefully did not enter final judgment . . . as it contemplated that [this case] would effectively be

stayed until the completion of the trial in the [state court action] occurred and the indemnification matter would be ripe. To that end, the Court has sought and continues to seek and receive updates on the progress of the [state court action].

. . .

Accordingly, . . . if [the case was] remanded now, the Court would retain jurisdiction, stay matters pending resolution of the [state court action] and entertain the claim regarding indemnification when it becomes ripe and enter final judgment after the matters are resolved.

(Citations omitted).

Federated appeals the district court's summary judgment rulings from this unusual posture.

## II. Standard of Review

We review a district court's determination of summary judgment de novo, "construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor." Clarendon Nat'l Ins. Co. v. Phila. Indem. Ins. Co., 954 F.3d 397, 403-04 (1st Cir. 2020). Summary judgment is merited "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. Discussion

### A. Jurisdiction

We first address our jurisdiction to decide this case. "Federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but, rather, must

appraise their own authority to hear and determine particular cases." <u>Watchtower Bible & Tract Soc. of N.Y., Inc.</u> v. <u>Colombani</u>, 712 F.3d 6, 10 (1st Cir. 2013) (quoting <u>Cusumano</u> v. <u>Microsoft Corp.</u>, 162 F.3d 708, 712 (1st Cir. 1998)). In this case, it is not clear whether Congress has vested us with jurisdiction to review the district court's summary judgment determinations. Federated posits that we have jurisdiction pursuant to either 28 U.S.C. § 1291 (conferring appellate jurisdiction over "all final decisions of the district courts of the United States") or § 1292(a)(1) (conferring appellate jurisdiction over "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"). Peterson's disagrees on both counts.

Whether either statute confers us with jurisdiction to decide this case is not immediately apparent. It is not obvious that any of the district court's orders constitute a "final decision[]" for the purposes of § 1291. The district court made clear that it did not intend to enter a final judgment and that it continues to actively supervise the case. <u>See</u> <u>Watchtower Bible</u>, 712 F.3d at 11 (noting the offense to "basic tenets of judicial administration" caused by "the unseemly spectacle of two courts competing simultaneously for the parties' attention"). Nevertheless, Federated asserts that we have jurisdiction under

the theory that the district court's orders, collectively, finally disposed of all pending claims before it.  See WM Cap. Partners 53, 975 F.3d at 83 (explaining that a "final decision" is one that "end[s] the litigation on the merits and leave[s] nothing for the court to do but execute the judgment" (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).  It argues that the district court did dismiss the duty-to-indemnify claims, despite its ensuing order backtracking from that dismissal, which left nothing for the district court to decide.

The exercise of jurisdiction pursuant to § 1292(a)(1) is also murky.  Federated asserts that the district court has "compel[led]" it to defend Peterson's in the state court case, and thus that the summary judgment determination is appealable as an injunction; Peterson's retorts that the court has not issued an injunction or any other order commanding Federated to do anything.  See Zurn Indus., LLC v. Allstate Ins. Co., 75 F.4th 321, 328-29 (3d Cir. 2023) (wrestling with a similar appeal and finding no jurisdiction under § 1292(a)(1) when the district court's orders did not require the insurer to take any particular act and were not enforceable by contempt).

In short, it would take some untangling to assess whether we have statutory jurisdiction to hear this case and, if so, under which statute.  However, when a case "poses a question of statutory, not Article III, jurisdiction" and when the "decision

on the merits will favor the party challenging the court's jurisdiction," we may sidestep the jurisdictional determination altogether and resolve the case by asserting "hypothetical" jurisdiction. In re Fin. Oversight & Mgmt. Bd. for P.R., 91 F.4th 501, 508 (1st Cir. 2024) (quoting Doe v. Town of Lisbon, 78 F.4th 38, 44-45 (1st Cir. 2023)). Although we do not prefer to rely on hypothetical jurisdiction and do not do so lightly, the "jurisdictional riddle" posed by the unusual procedural posture of this case persuades us it is prudent to do so here. See Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 91 (1st Cir. 2020) ("[C]ourts should not rush to decide unsettled issues when the exigencies of a particular case do not require such definitive measures." (quoting Privitera v. Curran (In re Curran), 855 F.3d 19, 22 (1st Cir. 2017)). As we describe below, we determine that Peterson's -- the party challenging jurisdiction -- prevails on the merits. We therefore assume, without deciding, that we have jurisdiction to avoid "sort[ing] out [the] thorny jurisdictional tangles" presented by the case. In re Fin. Oversight & Mgmt. Bd., 91 F.4th at 509 (alterations in original) (quoting Nisselson v. Lernout, 469 F.3d 143, 151 (1st Cir. 2006)); see also Johansen v. Liberty Mut. Grp. Inc., 118 F.4th 142, 148 (1st Cir. 2024) (taking the same approach).

## B. Merits

With that, we turn to the single merits issue before us on appeal: whether, as a matter of Massachusetts law, the insurance policy's known loss and loss-in-progress provisions absolve Federated of its duty to defend the state action. For the reasons that follow, we affirm the district court's determination that they do not.

We begin with principles that are not in dispute. Under Massachusetts law, "[a]n insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Metro. Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 667 (Mass. 2011) (quoting Billings v. Com. Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010)). "[W]here an insurer is obligated to defend an insured on one of the counts alleged against it, the insurer must defend the insured on all counts, including those that are not covered" (commonly referred to as the "in for one, in for all" principle). Mount Vernon Fire Ins. Co. v. Visionaid, Inc., 76 N.E.3d 204, 210 (Mass. 2017). On the other hand, "when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to . . . defend." Metro. Prop. & Cas. Ins. Co., 951 N.E.2d at 667 (quoting Billings, 936 N.E.2d at 414). "Any uncertainty as to whether the pleadings include or are

reasonably susceptible to an interpretation that they include a claim covered by the policy terms is resolved in favor of the insured." Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 106 N.E.3d 572, 577 (Mass. 2018) (quoting Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co., 991 N.E.2d 638, 642 (Mass. 2013)). Here, then, Federated must defend Peterson's in the state action unless all of the allegations in that action "lie expressly outside the policy coverage." Metro. Prop. & Cas. Ins. Co., 951 N.E.2d at 667 (quoting Billings, 936 N.E.2d at 414).

As we previewed, the district court found that some, but not all, of the allegations in the state action lie outside of the policy's coverage. It determined that the allegations by class members who first received heating oil before July 5, 2019 (the date that the policy period commenced) were indeed excluded from coverage by the known loss and loss-in-progress provisions. But the district court saw no reason to extend that exclusion to class members who received heating oil for the first time after coverage began, reasoning that Peterson's did not know about damage that had not yet occurred. Federated specifically appeals this determination, arguing that the known loss and loss-in-progress provisions also foreclose coverage for the post-July 5, 2019 class members. If correct, Federated would have no duty to defend the suit as a whole because the claims of the post-July 5, 2019 class

members are the only remaining claims that may be covered by the policy.

Background in place, we turn to the linchpin of the appeal: whether claims by class members who first incurred damage after coverage began are excluded from coverage by the known loss and loss-in-progress provisions because Peterson's knew about the same type of damage experienced by earlier class members. In essence, Federated asks us to view the entire class action as a single unit such that Peterson's knowledge of the action as a whole precludes coverage for all claims of all class members. Peterson's, on the other hand, counters that each member of the class is unique and "experienced separate and distinct incidents of property damage." Consequently, knowledge of earlier class members' damage cannot serve as the basis for excluding later class members' claims.

To assess which of these views is correct, we begin with the policy language. "Interpretation of an insurance contract is a pure question of law." Zurich Am. Ins. Co. v. Med. Props. Tr., Inc., 237 N.E.3d 733, 737 (Mass. 2024) (citing Ken's Foods, Inc. v. Steadfast Ins. Co., 199 N.E.3d 1286, 1289 (Mass. 2023)). "If the language of an insurance policy is unambiguous, then we construe the words in their usual and ordinary sense." Id. (quoting Vt. Mut. Ins. Co. v. Poirier, 189 N.E.3d 306, 310 (Mass.

2022)). We resolve ambiguous policy language in favor of the insured. Id.

By its terms, the policy at issue covers "property damage" that is caused by an "occurrence." "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Putting those together, coverage centers around individual "occurrences" causing injury to property.

Although the parties do not dispute that there was an "occurrence" here, they do not agree on what, precisely, that occurrence was. Was there, as Peterson's suggests, an "occurrence" every time Peterson's delivered biodiesel-enriched oil that allegedly damaged a customer's heating equipment? Or, as Federated would have it, was Peterson's entire course of conduct in delivering allegedly defective oil to its customers a single "occurrence?" Defining the "occurrence" here matters because (1) the known loss provision forecloses coverage for "property damage" that the insured knew about before the policy period began and (2) "property damage" is itself defined by reference to an "occurrence." If, for example, the provision of enriched oil to each customer was a separate "occurrence," then providing oil to each new customer would constitute new "property damage" under the

- 16 -

policy. Under that view, Peterson's knowledge of earlier customers' "property damage" could not, by the policy's language, be knowledge of "property damage" to a different customer's heating equipment that had not yet occurred.

The usual and ordinary sense of the word "occurrence" leads us to conclude that, here, the provision of heating oil to each new customer constituted a separate occurrence. An "occurrence" is "something that happens; [an] event; [an] incident." Occurrence, Dictionary.com, https://www.dictionary.com/browse/occurrence [https://perma.cc/Z5VJ-HEXN]. Similarly, an "accident" (which the policy defines an "occurrence" to be) "means an unexpected happening without intention or design." Quincy Mut. Fire Ins. Co. v. Abernathy, 469 N.E.2d 797, 799 (Mass. 1984) (quoting Beacon Textiles Corp. v. Emps. Mut. Liab. Ins. Co., 246 N.E.2d 671, 673 (Mass. 1969)). Thus, an "occurrence" is an "event," "incident," or "happening." Each of these terms connotes a relatively concrete, time-bound quality. We accordingly think the "occurrence" here is not naturally understood as referring to the provision of oil to multiple customers across multiple years. And to the degree that the meaning of an "occurrence" here could instead be deemed ambiguous, our conclusion is bolstered by the requirement that we construe policy ambiguities in favor of the insured. See Zurich Am. Ins. Co., 237 N.E.3d at 737.

Armed with this understanding, we conclude that the plain language of the known loss and loss-in-progress provisions does not impute Peterson's prior knowledge of "property damage" caused by one "occurrence" to another, separate "occurrence." Recall that the policy covers "property damage" caused by an "occurrence." Because the alleged damage to different customers reflects distinct "occurrences," each customer experienced distinct "property damage." Knowledge of one class of customers' alleged property damage, then, is not knowledge of a different class of different customers' alleged property damage. This is true regardless of whether the different occurrences were caused, in a general sense, by the same decision to sell biodiesel-enriched oil.

We have focused thus far on the language of the policy rather than applicable case law because Massachusetts courts have not yet had occasion to decide this specific issue. However, some cases provide tangential support for our conclusion. We review those cases and then describe why the cases cited by Federated do not require a different result.

In Liberty Mutual Insurance Co. v. Black & Decker Corp., a Massachusetts district court distinguished between "damage . . . caused by continuous exposure from the same injury" and damage caused by repeated instances of the same injury, such as "where property damage occurred during every year that dumping took

- 18 -

place." 383 F. Supp. 2d 200, 212 (D. Mass. 2004) (citation omitted). "In such cases, there is not one accident, but many," meaning that a deemer clause does not "deem" those accidents to have happened prior to the policy period in which they actually occurred. Id. The court reasoned that "each injurious incident is caused by a physically and temporally distinct cause, even if there is a high degree of repetition [between the causes], and a legally discrete injury occurs each time." Id. at 213. Such reasoning supports the view that deliveries of oil to different class members are best considered to be their own, individual occurrences.

Similarly, in Stonewall Insurance Co. v. Asbestos Claims Management Corp., the Second Circuit found that the common law known loss doctrine did not preclude coverage of later claims caused by asbestos even when a company knew about the risks posed by asbestos before the policy period began. 73 F.3d 1178, 1215-16 (2d Cir. 1995). The court reasoned that the company did not know the identity of later claimants or the type and extent of their damages, so was "fully entitled to replace the uncertainty of its exposure with the precision of insurance premiums." Id. at 1215. This, too, supports limiting the applicability of the known loss provision to the individual damages about which the company knew before coverage commenced. By the Second Circuit's reasoning, Federated could have charged whatever insurance premiums it

- 19 -

thought fair to assume the risk that unknown future claimants might also claim damages based on the same theory of harm asserted in the already-filed class action.

The cases cited by Federated do not direct a different result. Federated first cites Bartholomew v. Appalachian Insurance Co., 655 F.2d 27 (1st Cir. 1981). There, a car wash sued the manufacturer of its car washing machine for damages that it incurred after learning that the machine was defective. Id. at 28. This court found that coverage was precluded because, under principles of manufacturer liability, the covered "occurrence" happened when the car wash discovered the defect, which was before the policy period began. Id. at 28-29. Because the occurrence happened before the policy period began, it was not covered by the policy. This does not inform our analysis of what constituted an "occurrence" here.

Clarendon National Insurance Co. v. Philadelphia Indemnity Insurance Co. is similarly inapplicable. 954 F.3d at 405-06. There, we affirmed that there was no duty to defend where continuous water and mold damage occurred due to a leak that manifested three years before the policy period in question began. Id. We took pains to explain that there were no allegations of new leaks emerging for the first time during the policy period and that the old leak had not been fixed before the policy period. Id. Likewise, in Arch Specialty Insurance Co. v. Colony Insurance

Co., the district court concluded that there was no duty to defend where leaks that occurred during the policy period had first begun before the policy period. 590 F. Supp. 3d 395, 421-23 (D. Mass. 2022). Both of those situations, then, differ from this case -- in which new damage allegedly occurred to new customers during the policy period -- and accordingly do not direct the outcome here.

Finally, we address what we perceive to be a slightly different iteration of Federated's argument on appeal: that Peterson's receipt of the class action complaint and demand letter in March 2019 actually served as notice of the claims of the post-July 5, 2019 class members even though the damage giving rise to those claims had not yet occurred. Federated reasons that notice of the class action served as notice of damages from class members "past, present, and future." In conjunction with the deemer clause -- which "deem[s]" Peterson's to know of property damage when it receives a "claim for damages" -- this would bring the entire action within the policy's known loss provision.

We are not persuaded by this novel argument. The known loss provision in the policy excludes only "property damage" that occurs during the policy period if, prior to the policy period, no insured "knew that the . . . 'property damage' had occurred, in whole or in part." As we have discussed, each customer's "property damage" is distinct. Service of the class complaint before the policy period began, then, could not have led Peterson's to "know"

about not-yet-existent "property damage" to different equipment owned by different customers. While Federated is correct that the same class action eventually grew to include customers who first received biodiesel-enriched oil during the policy period (because the class stretched to the "present," a time period that expanded as time passed), it does not follow that those customers were already included when Peterson's received the demand letter and complaint. They were not. And while Federated is also correct that later customers' claims relied on the same theory of damages about which the initial class complained, this is immaterial under the policy, which excludes only earlier-known "property damage" itself from coverage.

We conclude that the district court correctly treated occurrences of property damage that began after the coverage period commenced as distinct from occurrences that began before the coverage period commenced. This correctly resulted in the determination that the known loss and loss-in-progress provisions did not foreclose coverage for the post-July 5, 2019 claimants. And because not all of the claims asserted in the underlying action lie expressly outside of the policy's coverage, the district court rightly determined that Federated has a duty to defend the state action.

## IV. Conclusion

For the foregoing reasons, the district court's summary judgment rulings regarding Federated's duty to defend are **<u>affirmed</u>**.